**In re Edward and Catherine RUSSELL, Debtors.**

**Bankruptcy No. 882–81555–18.**

United States Bankruptcy Court,
E.D. New York.

April 26, 1983.

Cohen & Warren, Smithtown, N.Y., for debtors.

Buckley, Treacy, Schaffel, Mackey & Abbate, New York City, for Standard Roofing; Raymond J. Aab, New York City, of counsel.

Richard J. McCord, Glen Cove, N.Y., Trustee.

DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Standard Roofings, Inc. (hereinafter "Standard"), a creditor of the above-captioned debtors, has moved for an order vacating the confirmation of the debtors' Chapter 13 plan on the grounds *inter alia* that the debtors made certain misrepresentations and improperly classified Standard's claim as unsecured. In ancillary context, Standard challenges the validity of the claim asserted, by Hamburg Savings Bank, holder of a first mortgage on debtors' real property.

FACTUAL CONTEXT

On June 16, 1982, the debtors, Edward and Catherine Russell, filed a petition under Chapter 13 of the Bankruptcy Code, listing Standard as an unsecured creditor. On August 12, 1982, Standard filed a proof of secured claim in the amount of $31,234.58. The claim arises out of a confession of judgment in favor of Standard dated September 18, 1981 in the original amount of $45,043.70, secured by a mortgage on the debtors' premises at 433 Browns Road, Lake Ronkonkoma, New York. The mortgage was recorded with the Suffolk County Clerk on October 7, 1981, and was filed with the Suffolk County Registrar within three months of the filing of debtors' petition. The debtors, contending that the mortgage lien asserted by Standard is invalid due to Standard's failure to timely comply with certain filing requirements of the New York Torrens Act (which is codified in Article 12 of the New York Real Property Law), classified Standard's claim as unsecured in their Chapter 13 plan. The plan was confirmed without objection on September 14, 1982.

The debtors' home is situated on four lots, designated 15, 16, 30 and 31. Prior to acquiring title to the premises, the debtors were unsuccessful in obtaining a building loan with which to construct a home. In order to assist the debtors, Catherine Russell's parents, Alfred and Eileen Farrell, applied for and obtained the necessary mortgage from Hamburg Savings Bank and took title to the premises by deed dated October 13, 1966. The debtors immediately moved into the premises. The Farrells, who had a home of their own, never resided at the subject premises.

By deed dated February 8, 1968, the Farrells conveyed lots 15, 16 and 30 (allegedly omitting lot 31 through inadvertence) to the debtors. Lots 15, 16 and 30 were registered in the debtors' names in accordance with the New York Torrens Act. Mrs. Farrell has common law (*i.e.* unregistered) title to lot 31, duly recorded in the office of the Suffolk County Clerk.

The Hamburg mortgage, which is a first lien on the premises in question, has not been assumed by the debtors. However, the debtors, not the Farrells, have been making the monthly payments thereon.

Standard now seeks to have the court rescind its prior order of confirmation on the grounds that: (1) its claim should have been treated as secured; (2) any defect in perfecting its mortgage lien was caused by the fraudulent conduct of the debtors in failing to notify Standard that the mortgaged property was subject to the special filing requirements imposed by the New York Torrens Act; (3) it was led by the court's notice of the debtors' proposed plan to believe that its claim was in fact being treated as secured; (4) the claim of Hamburg Savings Bank is not a legal obligation of the debtors, and should not be allowed as against the estate; (5) the debtors misrepresented to the court the value of their home and automobiles; and (6) the debtors misrepresented to the court the actual extent of the debtors' business.

I. *Standard's Claim*

Standard's claim arises from a mortgage dated September 17, 1981 in the amount of $45,043.70 covering the debtors' residence in Lake Ronkonkoma, Suffolk County, New York. The parties do not dispute that the property in question is subject to the provisions of the Torrens Act, which is codified in Article 12 of the New York Real Property Law. The purpose of the Torrens Act

"is to provide a system by which titles can be registered so that a person can ascertain by an inspection of the register in whom the title to a particular piece of property is vested and the encumbrances and charges to which the estate is subject." 2 J. Rasch, Real Property Law and Practice, 837 (1st ed. 1962). Section 400 of the Real Property Law states as follows:

> A person who receives a certificate of title pursuant to a judgment of registration, except in case of fraud to which he is a party, and a purchaser of registered real property, who takes a certificate of title for value and in good faith, shall hold the same free from all incumbrances, charges, trusts, liens and transfers except those noted on the certificate in the registrar's office ... [other exceptions omitted].
>
> ... [N]o incumbrance, charge, trust, lien, or transfer shall take effect upon or over real property the title to which has been registered, unless the instrument creating and setting forth such incumbrance, charge, trust, lien or transfer has been filed with the registrar and a memorial or notation thereof made upon the certificate of title covering the property.

N.Y.R.P.L. § 400 (McKinney 1968).

In the present case, Standard filed its mortgage with the Suffolk County Clerk, but did not file it with the Suffolk County Registrar or cause its interest to be noted on the certificate of title, as required by R.P.L. § 400, until shortly before the debtors filed their bankruptcy petition. As conceded by Standard's counsel, the perfection of Standard's security interest within three months of the debtors' petition constitutes a voidable preference under 11 U.S.C. § 547(b). Tr. at 4–5. Thus, insofar as this proceeding is concerned, it is as if Standard had never perfected its mortgage lien by filing with the county registrar.

Standard, citing *Matter of Robison*, 665 F.2d 166 (7th Cir.1981), contends that the failure to comply with the filing requirements of the Torrens Act does not render the lienor's interest ineffective either as between the parties or as between the lien-

or and the debtor's trustee in bankruptcy. The underlying rationale of the *Robison* case is that the Torrens Act was intended to protect prospective purchasers of real property, and was not intended to benefit judgment creditors. Since the trustee in bankruptcy was deemed merely to have the rights and powers of a judicial lien creditor, and not those of a bona fide purchaser of real property, the court reasoned that he could not defeat the purchaser's unperfected interest.

Standard's reliance on *Robison* is misplaced. Unlike the present case, *Robison* was decided under the Bankruptcy Act of 1898. Under the present Code, the trustee's rights and powers have been expanded to include any such rights and powers that could be exercised by "a bona fide purchaser of real property from the debtor ..., that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a)(3). Thus, the trustee in the present case falls within the class of persons intended to benefit from the Torrens Act, and has priority over Standard pursuant to section 400 of the New York Real Property Law. *See* B. Weintraub & A. Resnick, Bankruptcy Law Manual, ¶ 7.02 (1980). Since Standard does not have a validly perfected mortgage lien on the debtors' home and since the trustee may defeat an unperfected mortgage lien under section 544(a)(3) of the Code, Standard is not in a position to assert such lien.

## II. *Reconsideration of the Confirmation Order is Denied*

Section 1327(a) of the Bankruptcy Code states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

Section 1330 of the Code, which governs the revocation of confirmation orders, provides in pertinent part as follows:

On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

11 U.S.C. § 1330(a).

In the present case, Standard failed to object to confirmation of the debtors' plan despite ample opportunity to do so. Standard contends that since the debtors did not object to its proof of secured claim, it justifiably believed that its claim had been accorded secured status. The fact remains, however, that Standard was on notice that the plan treated its claim as unsecured, and did not object to its confirmation. The notice sent by the court to Standard regarding the proposed plan expressly stated in bold letters that "THIS CLAIM IS LISTED AS UNSECURED." Moreover, a comparison of the notice and the plan reveals that there is no inconsistency between them. Under both the notice and the plan the unsecured creditors are to receive 26% of their allowed claims after payment in full of secured claims. Accordingly, Standard's objection as to adequacy of notice is entirely without merit.

■ Standard next contends that the debtors fraudulently understated both the extent of their business operations and the respective values of their home and automobiles. Insofar as the extent of the debtors' business is concerned, Standard alleges that the debtors misrepresented in their petition that Mr. Russell operated a business known as the Nesconset Supply Company only during 1981, when in fact such operations continued into 1982. Standard has produced a copy of a check drawn by Stonegate at Grasmere Associates on February 19, 1982 in the amount of $2,000, which is made payable to Nesconset Supply Company. Annexed thereto is a copy of a letter from Mrs. Russell dated February 24, 1982 transmitting the check in question to a Mr. Murphy for forwarding to Standard. At most, this exhibit shows that the debtors acted as a disbursing agent for an already completed

job. It does not demonstrate that the debtors conducted any business on behalf of Nesconset beyond 1981. While Standard certainly should not be precluded from further examining into the business activities of the debtors, there is no present cause to find that the debtors fraudulently misrepresented the scope of their business operations in their petition.

■ Standard's objection to the respective values assigned by the debtors to their home and automobiles is barred by the preclusive effect of confirmation. As the court stated in In re Lewis, 8 B.R. 132, 137, 7 B.C.D. 105, 108 (Bkrtcy.D. Idaho 1981), "[t]he Order of Confirmation is ... res judicata as to all justiciable issues decided or which could have been decided at the hearing on confirmation." Accord, In re Flick, 14 B.R. 912, 918, 5 C.B.C.2d 494, 502 (Bkrtcy.E.D.Pa.1981). Certainly, the valuation of assets is an inherent, albeit sometimes implicit, part of confirmation. See 11 U.S.C. § 1325(a)(4), (5). Standard had an opportunity to examine the debtors and the assets scheduled in their petition prior to confirmation, and there is no reason to believe that its present motion in this regard is founded upon newly discovered evidence or any other justification delineated in Rule 60(b) of the Federal Rules of Civil Procedure. Even if the court were to consider Standard's valuation objection on its merits, it is doubtful that the appraisals of the debtors' home submitted by Standard would be of any probative value. Manifestly, the appraisals include property that is not owned by the debtors, to wit: lot 31. According to the estimation of Standard's counsel, lot 31 comprises 20%–25% of the appraised property. Tr. at 7. Thus, the appraisals overstate the value of the debtors' property and are insufficient to discredit the value assigned thereto by the debtors.

In light of the foregoing findings, the court hereby denies Standard's motion for reconsideration of the order of confirmation.

III. *Hamburg's Claim*

■ Standard maintains that although Hamburg Savings Bank holds a first mort-

gage on the debtors' premises, the debtors never assumed the mortgage and are not legally obligated to make payments thereunder. Upon reviewing the court's file, it is apparent that neither Hamburg Savings Bank nor the debtors' parents, who are undoubtedly parties in interest, have been given notice of the present proceeding. To adjudicate the merits of Hamburg's claim without affording all interested parties an opportunity to be heard would amount to a denial of due process. Accordingly, Standard's objection to Hamburg's claim is not ripe for review.

The relief sought in Standard's motion is in all respects denied, without prejudice to renew its objection to Hamburg's claim on notice to all parties concerned.

Settle Order.