In re Carl R. YODER and Sharon L.
Yoder, Debtors.

Carl R. YODER and Sharon L.
Yoder, Appellees,

v.

The UNITED STATES of America, U.S.
Dept. of Agriculture, Farmers Home
Administration, Appellant.

Civ. A. No. 83–3173.
Bankruptcy No. 82–3681.
Adv. No. 82–281.

United States District Court,
W.D. Pennsylvania.

Oct. 17, 1984.

James R. Walsh, Johnstown, Pa., for
plaintiffs.

Judith K. Giltenboth, Asst. U.S. Atty.,
Pittsburgh, Pa., and Bevery Weiss Manne,
U.S. Dept. of Agriculture, Harrisburg, Pa.,
for defendant.

## OPINION

MANSMANN, District Judge.

This matter comes before the Court on
appeal by the Farmers Home Administra-
tion from the Order of the Bankruptcy
Court dated October 13, 1983 (which incor-
porated its August 16, 1983 Memorandum
Opinion). 32 B.R. 777 For the reasons
and to the extent set forth below, the Or-

der appealed from is affirmed in part and reversed in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On various dates set forth below, both prior and subsequent to the October 1, 1979 effective date of the Bankruptcy Reform Act of 1978 (the "Code"), Appellees, Carl R. Yoder and Sharon L. Yoder ("Debtors") obtained various secured loans from Appellant, the Farmers Home Administration of the United States Department of Agriculture ("FmHA").

*Loan Activity Prior to the Effective Date of the Code*

On June 26, 1973, the Debtors obtained a $10,000 operating loan from the FmHA and gave the FmHA a security interest in certain crops, farm equipment, animals and livestock. The security agreement was executed by the Debtors and delivered to the FmHA on June 26, 1973. It is undisputed that the FmHA's security interest was perfected at that time. Thereafter, a continuation statement was filed May 11, 1978.

On September 24, 1976, the Debtors obtained a $42,630 Farm Ownership Loan. In connection with this loan, which was used to purchase real estate, the Debtors executed a real estate mortgage which was recorded that same day. Since this mortgage was subject to another lien, a security agreement was executed as further security on September 13, 1976 and this second lien was perfected on September 20, 1976. A continuation was filed May 19, 1981.

On June 5, 1978 and October 2, 1978, the Debtors obtained two additional operating loans from the FmHA in the amounts of $38,000 and $2,000, respectively. These loans were duly secured and perfected.

On September 17, 1979, the Debtors obtained a $5,700 Economic Emergency Loan pursuant to the Emergency Agricultural Credit Adjustment Act of 1978.[1] In consideration of and as security for this loan, the Debtors executed a security agreement and a real estate mortgage on September 17, 1979. On that same date the secured loan was perfected and the mortgage was recorded. Additionally, the real estate mortgage secured the following loans: June 26, 1973 ($10,000); June 5, 1978 ($38,000); October 2, 1978 ($2,000) as well as September 17, 1979 ($5,700).

*Loan Activity Subsequent to the Effective Date of the Code*

On December 19, 1980, at the request of the Debtors, in order to permit them to manage their debts more effectively, the FmHA consolidated the June 26, 1973, June 5, 1978 and October 2, 1978 notes. In consideration thereof, on December 19, 1980 the Debtors executed a promissory note and a real estate mortgage which was duly recorded.

On March 17, 1981 the FmHA subordinated its September 17, 1979 and December 19, 1980 mortgages to a $30,000 mortgage held by Dale National Bank. At that time, the FmHA was given an additional security agreement which was executed on March 20, 1981 and this security interest was perfected on March 24, 1981.

Thereafter, on November 15, 1982, the Debtors filed their petition in bankruptcy under Chapter 7.

*Procedural History Subsequent to the Filing of the Petition*

On December 1, 1982 the Debtors filed their "Complaint to Avoid Liens" under 11 U.S.C. §§ 506 and 522.

More particularly, in Count I of their Complaint, the Debtors seek to determine that certain secured liens held by the FmHA are not supported by value and hence should be declared unsecured debt to the extent that the liens exceed the value of the collateral under 11 U.S.C. § 506(a).[2]

---

1. With respect to the $5700 loan, the Debtors contend that this is a post-Code transaction. However, in light of the October 1, 1979 effective date of the Code and the September 17, 1979 transaction date, this Court reaches the contrary conclusion.

2. These are the September 24, 1976 mortgage in the amount of $42,630; and the September 17,

In Count II of the Complaint, the debtors seek to claim certain exemptions under § 11 U.S.C. § 522(d)(5) and (6) for "tools and implements of the trade."[3] Additionally, the Debtors also seek to avoid the FmHA's security interests in the tools under § 522(f)(2)(B). Alternately, the Debtors claim that the FmHA's security interests are avoidable under § 522(f)(2)(A) as the items are primarily for personal use.

In Count III, the Debtors claim that certain breeding animals are "implements ... or tools, of the trade" as set forth in 11 U.S.C. §§ 522(d)(6) and 522(f)(2)(B) and seek exemptions on this basis.[4]

This matter was heard in the United States Bankruptcy Court for the Western District of Pennsylvania. In its Memorandum Opinion dated August 16, 1983 (which was incorporated in an order dated October 13, 1983), with respect to Count I, the Bankruptcy Court permitted the Debtors to avoid certain liens under 11 U.S.C. § 506(a) and held that under this statute the appropriate valuation is fair market value, not liquidation as the Debtors asserted. Further, contrary to that which had been asserted by the FmHA, the Bankruptcy Court found that there is no requirement that the FmHA file a proof of claim under 11 U.S.C. § 502 before the Debtors can proceed under 11 U.S.C. § 506(a). On Appeal, the FmHA agrees that if any market value is to be applied, it should be fair market value. However, the FmHA appeals from that portion of the order which permits the Debtors to utilize 11 U.S.C. § 506 "to determine secured status for lien avoidance purposes."

With respect to Counts II and III, the Bankruptcy Court found that the consolidation of the June 26, 1973, June 5, 1978 and October 2, 1978 notes by the December 19, 1980 consolidation note and mortgage constituted a novation, and since the novation

transpired after the effective date of the Code, permitted the avoidance of a portion of the liens pursuant to 11 U.S.C. § 522(f). The FmHA appeals from this portion of the Order.

Further, with respect to Count II, the Bankruptcy Court permitted exemptions under 11 U.S.C. §§ 522(f)(2)(B) as well as 522(d)(5) for certain tools of the trade. The FmHA did not appeal from this portion of the Order and is, therefore, not considered herein.

In connection with Count III, the Bankruptcy Court rejected the Debtors' claim that they are entitled to avoid non-purchase money security interest in breeding stock under 11 U.S.C. § 522(f)(2)(B), although it found that the Debtor can exempt the security interest in breeding stock under 11 U.S.C. § 522(d)(3) and (5) and under 11 U.S.C. § 522(f)(2)(A). The FmHA does not appeal from this portion of the Order.

The Bankruptcy Court also rejected the FmHA's claim of sovereign immunity in connection with 11 U.S.C. § 522(f) and FmHA appeals on this issue as well.

After filing its Notice of Appeal, the FmHA applied for and was granted a stay of the enforcement of the October 13, 1983 Order pending the determination of the instant appeal.

## DISCUSSION

*Standard of Review*

The standard for review for the district court sitting as an appellate court in a bankruptcy proceeding was enunciated in *Universal Minerals v. C.A. Hughes & Co.,* 669 F.2d 98 (3d Cir.1981). Specifically, a review of "basic facts" and "inferred factual conclusions" is subject to the "clearly erroneous" standard, whereas, a review of "ultimate facts" is subject to a different

1980 and September 19, 1980 mortgages both of which secure notes of the same dates in the amounts of $5700 and $47,111.20, respectively.

**3.** The secured loans at issue in Count II are those dated June 26, 1973, September 30, 1976 and March 24, 1981.

**4.** The livestock are encompassed by the following non-possessory, non-purchase money security interests held by the FmHA and dated June 26, 1973, September 20, 1976 and March 24, 1981.

standard, which is plenary, as is the review of statutory construction. *Id.* at 101–102.

*Allowance of Liens Under 11 U.S.C. § 506(a)*

■ As noted above, in Count I the Debtors seek to avoid certain liens under 11 U.S.C. § 506(a). The FmHA has appealed from that portion of the Bankruptcy Order which permitted the Debtors to proceed initially under § 11 U.S.C. § 506(a)[5] rather than § 502(a).[6] The FmHA claims that "[a]bsent an 'allowed claim', the bringing of a complaint under the provisions of 11 U.S.C. § 506 cannot be used to determine secured status for lien avoidance purposes." In doing so, the FmHA relies on *In re Hotel Associates, Inc.*, 3 B.R. 340 (Bankr.E.D.Pa.1980).

It is undisputed that the mortgages against the Debtor's realty and the secured liens against their personalty held by the FmHA exceed the value of the property. Moreover, the parties stipulated to the value of the property. With respect to the realty, this was limited to the amount of the first and second mortgages, $87,000. With respect to the equipment and machinery, the boar breeding stock, the sow breeding and inventory as well as the swine stock, the values were stipulated to be $14,510, $11,450, $13,325 and $4,810, respectively.

Although the parties agreed on the fair market value of the property, the Debtors urged the Bankruptcy Court to utilize "liquidation value" as the standard. The Bankruptcy Court held that fair market value is the appropriate standard. Since this finding is not at issue on appeal it will not be addressed further.

The Bankruptcy Court also held that the Debtors were not precluded from filing a claim on behalf of the secured party under 11 U.S.C. § 506(a). In doing so, it stated:

[t]he Debtor could have raised § 502; however, by raising only § 506(a), the Debtor has admitted and treated the claim as undisputed and allowed. We hold that the bringing of an action by the Debtor under § 506(a) constitutes the filing of an allowed claim by the Debtor.

August 16, 1983 Memorandum Opinion at 4.

In the case of *In re Brager*, 28 B.R. 966, 967 (Bankr.E.D.Pa.1983), the court held that the filing of a proof of claim under 11 U.S.C. § 502(a) is "permissive only and not required." Moreover, it rejected the defendant's argument that the debtor could not ascertain secured status of the lien under 11 U.S.C. § 506(a), and permitted the debtor to do so. Additionally, the court stated: "we conclude that a section 502(a) determination is not a prerequisite to an action to ascertain secured status under 506(a)." *Id.* at 968.

Therefore, based on the foregoing, this Court affirms that portion of the Bankruptcy Court's Order which permits the Debtor to proceed under 11 U.S.C. § 506(a) to avoid certain liens and to determine secured status in Count I of the Complaint.[7]

*Avoidance of Liens Under 11 U.S.C. § 522*

■ Initially this Court will address the issue of sovereign immunity. The FmHA asserts that it is entitled to sovereign immunity with respect to the Debtors' 11 U.S.C. § 522(f) claims, as this statute does not apply to the United States. The Bank-

---

5. 11 U.S.C. § 506(a) provides in pertinent part: [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

6. 11 U.S.C. § 502(a) provides in pertinent part: "[a] claim or interest ... is deemed allowed, unless a party in interest ... objects."

7. More specifically, that portion of the Bankruptcy Order which is affirmed under 11 U.S.C. § 506 is: the allowance of the September 24, 1976 mortgage; the avoidance of the September 17, 1979 and September 19, 1979 mortgages; and the limitation of FmHA's secured liens to fair market value (boar breeding stock—$11,450, sow breeding stock—$13,325 and inventory swine stock—$4,810) with the remaining claim with respect thereto deemed unsecured.

ruptcy Court rejected this argument. Similarly, this Court finds that sovereign immunity is not available to the FmHA in connection with the 11 U.S.C. § 522(f) claims. *Gardner v. Commonwealth of Pennsylvania*, 685 F.2d 106 (3d Cir.1982), *cert. denied* 459 U.S. 1092, 103 S.Ct. 580 (1982).

■■■ With respect to Counts II and III, this Court will address the issue of whether the December 19, 1980 consolidation of the three loans predating the October 1, 1979 effective date of the Bankruptcy Code constituted a novation.

Initial resolution of this question is necessary because if the consolidation is a novation, the Court must then decide if the avoidance provisions of 11 U.S.C. § 522(f) apply. If the Court determines that this post-Code consolidation is not a novation, then since these secured loans were perfected prior to the effective date of the Code, the loans are not avoidable under 11 U.S.C. § 522(f), as the statute is not to be applied retroactively.[8]

Under Pennsylvania law, novation takes place "[w]hen the parties to a contract mutually agree to release one another from a valid contract and to substitute a new contract in place of an old one." *First Pennsylvania Bank, N.A. v. Triester*, 251 Pa. Super. 372, 381–382, 380 A.2d 826, 830 (Pa. Super.Ct.1977).

Moreover, " '[t]here is a legal presumption that the substituted paper is not taken in discharge, but is received as collateral security for the payment originally undertaken.' " 380 A.2d at 831, citing *Citizen's Bank of Wind Gap v. Lipschitz*, 296 Pa. 291, 145 A. 831 (1929) (other citations omitted). However, the "burden of showing such intention is upon the one who claims to be released." *Id.* (citations omitted).

Similarly, the U.S. Court of Appeals for the Third Circuit held that resolution of the question of whether a renewal note discharges the original obligation depends on the intention of the parties. *Peterson v.*

*Crown Financial Corp.*, 661 F.2d 287, 291 (3d Cir.1981).

Moreover, so long as the instrument itself is unambiguous, the intent of the contracting parties is to be ascertained from the document itself. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1009–1010 (3d Cir.1980).

Although the Bankruptcy Court concluded that a novation took place in connection with the December 19, 1980 consolidation, it failed to address the intent of the parties at the time of consolidation. The Debtors did not present any evidence to the Bankruptcy Court to support their claim that the parties intended that the original notes be satisfied and that a novation take place at the time of the consolidation, notwithstanding their burden to do so. To the contrary, the Debtors asserted "the note speaks for itself."

The text of the consolidation note on this issue unequivocally demonstrates that the parties did not intend for the note to extinguish or satisfy the prior indebtedness of the three notes it consolidated nor did they intend a novation. More particularly, the consolidation note provided:

> [T]his note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) ... Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not effected by consolidating ... The security instruments shall continue to remain in effect and the notes shall continue to remain as security for the loan evidenced by this note and for other related obligations.

Moreover, the notes were physically marked: "CONSOLIDATED AND RENEWED—NOT PAID IN FULL."

Based on all of the foregoing, this Court finds that the consolidation note is not a novation. Therefore, the December 19, 1980 consolidation note does not bring the

---

**8.** The parties do not dispute that *U.S. v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) holds that 11 U.S.C. § 522(f)(2) is not to be applied retroactively.

June 26, 1973, June 5, 1978 and October 2, 1978 notes within the ambit of the Code. Therefore, 11 U.S.C. § 522(f) is not available to the debtors in connection with their secured loan activity prior to the effective date of the Code since 11 U.S.C. § 522(f) cannot be applied retroactively and these liens cannot be avoided. Accordingly, the portion of the Bankruptcy Court's Order avoiding these liens is reversed.[9]

The FmHA does not appeal from the other portions of the Order concerning Counts II and III and accordingly they will not be discussed here.

An appropriate Order shall issue.

---

9. Since there are no liens concerning the FmHA subsequent to the effective date of the Code, this Court need not consider this matter further. The March 17, 1981 loan to the Debtors in the amount of $30,000 by Dale National Bank (which resulted in FmHA agreeing to subordinate its September 17, 1979 and December 19, 1980 mortgages) is not at issue here.