**In re Allen BENDER and Alesia Bender, Debtors.**

**Allen BENDER and Alesia Bender, Plaintiffs,**

**v.**

**COMMONWEALTH MORTGAGE COMPANY OF AMERICA, Defendant.**

Bankruptcy No. 87–02103F.
Adv. No. 87–0548F.

United States Bankruptcy Court, E.D. Pennsylvania.

March 22, 1988.

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for debtors.

Leslie J. Carson, Jr., Philadelphia, Pa., for defendant/Commonwealth Mortg. Co.

Edward Sparkman, Philadelphia, Pa., Trustee.

## MEMORANDUM

BRUCE I. FOX, Bankruptcy Judge:

On April 30, 1987, the debtors filed a chapter 13 bankruptcy petition. Among their creditors was Commonwealth Mortgage Company of America (hereinafter referred to as "Commonwealth") which held a mortgage against the debtors' residence. On May 19, 1987, Commonwealth filed a secured proof of claim. In response, the debtors commenced an adversary proceeding which, in essence, objected to the secured claim on two discrete grounds: first, that the allowed secured claim of Commonwealth is limited to $15,000.00 by virtue of 11 U.S.C. § 506(a), (d); second, that Commonwealth violated the provisions of the pre 1982 Federal Truth–in–Lending Act,

(hereinafter referred to as "TILA"), 15 U.S.C. § 1601 *et seq.*, and this violation entitled the debtors to a $2,000.00 recoupment against Commonwealth's claim.

In lieu of trial, the parties have stipulated that the fair market value of the debtors' residence was $15,000.00.[1] They also stipulated that Commonwealth did violate TILA and the debtors are entitled to a $2,000.00 recoupment. *See generally Werts v. Federal National Mortgage Ass'n*, 48 B.R. 980 (E.D.Pa.1985); *In re Dangler*, 75 B.R. 931 (Bankr.E.D.Pa.1987). Left for decision are two related legal issues: does 11 U.S.C. § 506(a), (d) afford these debtors any relief?; if so, how does one apply the TILA recoupment?

### I

The meaning of 11 U.S.C. § 506(a) has been well stated by a leading commentator:

The first sentence of section 506(a) provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553, is a secured claim only to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent the value of such interest or such amount is less than the amount of such allowed claim. Stated differently, section 506(a) requires a bifurcation of a "partially secured" or "undersecured" claim into separate and independent secured claim and unsecured claim components.

3 *Collier on Bankruptcy*, ¶ 506.04, at 506–15 (15th ed. 1987). (footnotes omitted). *Accord In re Everett*, 48 B.R. 618 (Bankr. E.D.Pa.1985). Its purpose is to reflect the economic reality that an undersecured creditor cannot expect to look to its collateral for full payment of its claim and so is both a secured creditor and an unsecured creditor:

The Code scheme of Section 506 is that creditors receive through the valuation procedure of the Bankruptcy Court the same property value they would receive through a nonbankruptcy forced sale of the Debtor's nonexempt assets as of the petition date.... The operation of section 506(d) merely effectuates the market place.

*In re Tanner*, 14 B.R. 933, 936–37 (Bankr. W.D.Pa.1981).

### A.

Commonwealth offers no challenge to those underlying premises. Rather, it argues correctly that 11 U.S.C. § 506(a) is not self effectuating. A lien is not void to the extent it exceeds an allowed secured claim, unless 11 U.S.C. § 506(d) applies. This subsection, which was amended in 1984, now states:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

It is subsection 506(d)(2) which is raised by Commonwealth.

As Collier notes, the provisions of § 506(d)(2) permit a lien to survive bankruptcy even though it exceeds the value of a secured claim which might have been allowed. If the creditor is content not to participate in the bankruptcy proceedings, (or is unaware of them), and fails to file any proof of claim, and neither the debtor nor any other person files a proof on behalf of the lien creditor, its lien will not be avoided:

Under section 506(d), prior to its amendment in 1984, a lien could not be avoided if "a party in interest [had] not

---

**1.** This stipulation makes no mention of the date of valuation. The parties' briefs assume that if § 506(a) is applicable, the allowed secured claim of Commonwealth could be limited to $15,000.00. On the issue of relevent time of the valuation, *compare In re Brager*, 39 B.R. 441 (Bankr.E.D.Pa.1984) *aff'd.* 49 B.R. 626 (E.D.Pa. 1985) (commencement of the case) *with* 3 *Collier on Bankruptcy* ¶ 506.04 at 506–36 (15th ed. 1987) (effective date of the chapter 13 plan).

requested that the court determine and allow or disallow such claim under section 502." This provision in effect required that the lienholder be given the opportunity for its "day in court" before any action affecting the lien could be taken. If no party in interest requested allowance or disallowance of the claim, the lien would survive the bankruptcy case even if the entire personal liability of the debtor were extinguished. The amended section 506(d) incorporates the notice aspect of prior section 506(d) by providing that liens will not be avoided if a proof of claim has not been filed.

Thus, there are occasions when the holder of a secured claim will have greater protection with respect to its lien than with respect to the claim secured by the lien. If the holder never becomes aware of the debtor's bankruptcy case (and, in a chapter 11 case, its claim is not scheduled or is scheduled as disputed, contingent or unliquidated), its claim may nonetheless be discharged by reason of its failure to file a proof of claim. However, in order for its lien to be avoided, either the holder or another person entitled to do so must file a proof of claim with respect to the holder's claim. The holder would, of course, be entitled to "notice and a hearing" with respect to an objection to the filed proof of claim.

3 *Collier on Bankruptcy*, § 506.07, 507–66 to 507–68 (15th ed. 1987). (footnote omitted) [2]

Commonwealth argues that its proof of claim, filed on May 19, 1987, is not a proof of claim for purposes of § 506(d) because it seeks only payment of the prepetition mortgage arrearages, not the entire prepetition debt; and, as the arrearage is less than the value of the debtor's residence, it contends that its proof cannot be challenged under § 506(d). This argument misinterprets both section 506(d)(2) and local Bankr.Rule 3001.1, as well as overlooks one aspect of its own proof of claim.

11 U.S.C. § 1322 contains two discrete parts. Subsection (a) lists three aspects which must be included in every chapter 13 plan. By contrast, subsection (b) lists items which may be included in a chapter 13 plan. Unlike Chapter 11, only the debtor in chapter 13 may file a plan. 11 U.S.C. § 1321. Thus, it is the debtor who decides whether to incorporate some or any of the provisions of § 1322(b) into his plan. Among those elective provisions is § 1322(b)(5) which permits a debtor to cure prepetition defaults of long term residential secured claims, while keeping current with postpetition payments.

The provisions of § 1322(b)(5) differ from the provisions of 11 U.S.C. § 1325(a)(5). The latter states:

> (5) with respect to each allowed secured claim provided for by the plan—
>
> > (a) the holder of such claim has accepted the plan;
> >
> > (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> >
> > (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
> >
> > (C) the debtor surrenders the property securing such claim to such holder.

When a debtor's plan provides for an allowed secured claim, the plan must comply with § 1325(a)(5) or else an objection to confirmation must be sustained. When the debtor's plan calls for curing a prepetition mortgage debt, it is not providing for the allowed secured claim of the mortgage, which is defined by 11 U.S.C. § 506(a). *Appeal of Capps*, 836 F.2d 773 (3d Cir.1987). *See In re Fries*, 68 B.R. 676 (Bankr.E.D.Pa.1986).

As *Collier on Bankruptcy* notes:

> When a default on a mortgage or other long term debt is cured under section 1322(b)(5), the full amount of the creditor's claim is not paid during the chapter 13 case. Rather, the debtor preserves the benefit of a longer payment schedule

**2.** *But see Matter of Brown*, 73 B.R. 740, 744 (Bankr.W.D.Wis.1987) (§ 506(d) may be applied if collateral has no value although no proof of claim was filed).

which extends beyond the due date of the last payment under the plan, and the creditor is protected by the exception to discharge for long term debts on which defaults are cured.

Thus, the curing of defaults pursuant to section 1322(b)(5) is a right conceptually distinct from chapter 13 cramdown, which allows a debtor to modify the rights of secured creditors by reducing their payments or in other ways. Indeed, when a long term mortgage on the debtor's principal residence is the creditor's only security, a chapter 13 plan may not modify the creditor's rights. In contrast to the curing of a long term debt which is not paid in full during the plan, where a secured creditor's rights are modified with respect to a debt provided for in the plan, the plan is not entitled to confirmation unless it does provide for full payment of the allowed secured claim, as well as interest to meet the "present value test," during the term of the plan.

5 *Collier on Bankruptcy* ¶ 1322.09[4], at 1322–20 to 1322–21 (15th ed. 1987) (footnotes omitted).

■ In some instances, a debtor will be unable to elect to cure the prepetition debt, pursuant to a chapter 13 plan, because the foreclosure process is too far advanced to be amenable to a cure under § 1322(b)(5). *Matter of Roach*, 824 F.2d 1370 (3d Cir. 1987). However, when that right to cure under § 1322(b)(5) exists, it is for the debtor [3] as the plan proponent, not the creditor, to elect to choose between curing the prepetition debt and providing for the allowed secured claim. *Cf. Appeal of Capps*, (provisions of § 1325(a)(5)(B)(ii) do not apply when the debtor elects to proceed under § 1325(b)(5)).

Commonwealth misinterprets local Bankr. Rule 3001.1 which, in relevant part, states:

(b) *Secured Claims.* Any creditor holding a secured claim on which the last payment is due after the date on which the final payment under the plan is due who files a proof of claim shall file an itemization which includes the following:

(1) the balance of principal due on the debt;

(2) The total amount of all payments not paid which were due to be paid on dates prior to the date on which the petition was filed ("pre-petition arrearage"), and

(3) Any and all interest, late charges, or other fees.

The purpose of this local rule was to facilitate the debtor's election and the confirmation process. If the debtor decides to provide for the entire claim of the secured creditor, it knows the amount of the prepetition claim asserted. If the debtor elects to cure the prepetition default, either by virtue of § 1322(b)(3), or (b)(5), it knows the amount of the default asserted.

■ In accordance with Bankr. Rule 3002(a), a secured creditor need not file a proof of claim. If it does not file, and if neither the debtor nor the trustee file a claim on its behalf, *see* Bankr.Rule 3004, then its lien is unaffected. *See* 11 U.S.C. § 506(d)(2). If it elects to file a proof of claim, as Commonwealth did in this bankruptcy case, it cannot elect to seek payment only of its prepetition arrearages; that election is for the debtor to make. The local bankruptcy rule requires that it disclose both the prepetition arrearage as well as the principal balance due.

■ In fact, Commonwealth filed such a proof of claim. In paragraph 6 of its proof, it states that a principal balance of "$11,538.85 plus interests and costs" was due. It then provided a detailed analysis of its arrearage claim. I recognize that subsumed in the term "interest" mentioned in paragraph 6 is the interest component of the unpaid prepetition mortgage payments which were delinquent. This sum must be added to the unpaid principal when computing the prepetition debt. Unlike the costs,

---

**3.** A debtor may propose a plan which elects neither of these two options. The creditor's lien would be unaffected, the debt will not be discharged, and the creditor could enforce its state created rights once the stay imposed by § 362(a) was terminated. *See In re Camp*, 78 B.R. 58, 65 n. 9 (Bankr.E.D.Pa.1987).

which are itemized, one cannot conclude from this proof of claim alone how much of the $6,706.80 of delinquent monthly payments reflects prepetition interest earned. While that information should have been disclosed by virtue of local bankruptcy rule 3001.1, such an omission does not mean that no proof of claim was filed or that a portion of the creditor's lien cannot be avoided. Rather, § 506(d)(2) refers to a situation where a lien creditor elects to file no proof and not participate in distribution —not when it files one which is incomplete. Thus, I conclude that if Commonwealth is undersecured, its lien may be avoided by virtue of the debtors' adversary proceeding.

### B.

Commonwealth also argues that § 506(a) and (d) cannot apply to those creditors whose rights cannot be "modified," pursuant to 11 U.S.C. § 1322(b)(2). Such creditors are those who hold "a claim secured only by a security interest in real property that is the debtor's principal residence...." Courts have divided on the question whether the application of § 506(a), (d) "modifies" the rights of such secured creditors. *Compare e.g. In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa.1987) (§ 506(a) may be applied); *In re Neal*, 10 B.R. 535 (Bankr.S.D. Ohio 1981) (same) *with In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986) (§ 506(a) cannot be applied); *In re Smith*, 63 B.R. 15 (Bankr.D.N.J.1986) (same). In the proceeding at bench, I need not reach the issue because I accept the debtors' contention that Commonwealth holds a broader security interest than one solely upon the debtors' residence.

By virtue of its mortgage instrument, which was attached to its proof of claim, Commonwealth holds a security interest on the "Buildings and Improvements on said premises, as well as all alterations, additions or improvements now or hereafter made to said premises, *and any and all appliances, machinery, furniture and equipment (whether fixtures or not)* of any nature whatsoever now or hereafter installed in or upon said premises...." (emphasis added). Despite this clear language, Commonwealth dismisses the clause referring to appliances, machinery and equipment as mere "boilerplate." Defendant's brief, at 7. To call language boilerplate is not to deprive it of meaning; instead "boilerplate" refers to language that is "commonly used." *Black's Law Dictionary*, at 159 (5th ed. 1979). The reference to furniture and appliances is no more or less "boilerplate" than that portion of the clause which refers to the buildings on the land. And Commonwealth does not and would not argue that it holds no security interest in the building which is the debtors' residence.

By its own terms, the security agreement between the debtors and Commonwealth grants Commonwealth a security interest in both real and personal property. Whether Commonwealth filed any UCC financing statements prepetition may affect its priority *vis-a-vis* third parties, but it does not affect its lien claim against the debtors. *In re Cervantes*, 67 B.R. 816, 819 (Bankr.E.D.Pa.1986):

The defendant contends that it has no security interest in the plaintiffs' personal property because it never filed a financing statement. Hence, defendant argues that, because the recording of a mortgage creates a lien against real property only, no lien against the debtors' personal property was created. As such, the defendant contends, the disclosure statement properly identified a security interest in the real estate only.

But we conclude that the defendant's contention is without merit. The filing of a financing statement is relevant for priority purposes only. It does not determine the existence or non-existence of a security arrangement. In the instant case, a security interest in the plaintiffs' personalty existed at the time General Electric provided the disclosure statement to the debtors. The fact that the security agreement was contained in the mortgage instrument rather than in some other document does not affect its validity. Under the UCC, as adopted in Pennsylvania, a security interest in per-

sonal property can be created by *any* writing describing the collateral by type. *See* 13 *Pa.Cons.Stat.Ann.* §§ 9203(a)(1), 9105 (Purdon 1984). The writing does not have to be labeled "security agreement", but can be in any form. *See, e.g., In re Bollinger Corp.*, 614 F.2d 924, 927 (3d Cir.1980).

Therefore, Commonwealth cannot contend that it falls within the exception stated in 11 U.S.C. § 1322(b)(2).

In fact, Commonwealth's stipulation that it violated TILA implicitly contradicts its assertion that it holds only a security interest in the debtors' real property. The only TILA violation asserted by the debtors in their complaint is found in ¶ 15(a) which states that the creditor failed to fully disclose the security interest it obtained. A number of decisions in the bankruptcy courts of this district have concluded that language similar to that found in the instant mortgage agreement created a security interest in personalty that must be disclosed in order to comply with TILA. *See e.g. In re Parker*, 80 B.R. 729 (Bankr.E.D. Pa.1987); *In re Johnson–Allen*, 67 B.R. 968, 971–974 (Bankr.E.D.Pa.1986); *In re Cervantes*. These decisions, with which Commonwealth apparently agrees, lead to the conclusion that this creditor took a security interest in the debtors' personalty. That being so, I need not address the applicability of § 506(a) to creditors secured only by a debtor's residence.

### C.

Having concluded that neither Section 506(d)(2) nor 1322(b)(2) prevent the application of section 506(a) and (d) to Commonwealth's claim, I must now decide whether it is an undersecured creditor. If not, its claim should be allowed, as secured, in full.

As I noted above, Commonwealth neglected to comply fully with local bankruptcy rule 3001.1 so I cannot tell from the

proof of claim the amount of the entire prepetition mortgage debt. However, in its brief, Commonwealth refers to its prepetition debt as totalling $19,000.00. Defendant's brief at 1, 5, 10. This figure, apparently taken by Commonwealth from the debtors' chapter 13 statement, ¶ 12(b), produces no outcry from the debtors. Therefore, I shall accept $19,000.00 as Commonwealth's total claim.

■ Both parties seem to argue that if § 506(a) and (d) apply, Commonwealth's secured claim can be allowed only to the extent of $15,000.00, the value of the debtors' residence. Here, the debtors are being inconsistent for they have successfully argued that Commonwealth has a security interest in personalty consisting of appliances, furniture, equipment, and machinery. To the extent that estate consists of such personal property, the value of such property should be added to the value of the debtors' residence to determine the creditor's allowed secured claim.[4]

Since the record in this proceeding is silent on the value of the furniture, appliances, etc., ordinarily it would be necessary to determine the respective burdens of proof or production held by each party under 11 U.S.C. § 506. *See Matter of Lampert*, 61 B.R. 785, 787 (Bankr.W.D. Wisc.1986) (proceeding under § 506 is analogous to proof of claim litigation). *See also In re Allstar Bldg. Products, Inc.*, 834 F.2d 898, 899–900 (11th Cir.1987) (secured proof of claim to which underlying security agreement is attached is deemed allowed). Here, however, Commonwealth in its brief concedes that if § 506 can be used to bifurcate its claim, then the secured portion is only $15,000.00. Thus, I view the parties as in agreement that the value of the secured personal property which serves as collateral for the loan is nominal.[5]

---

**4.** The debtors have not sought relief under 11 U.S.C. § 522(f)(2).

**5.** Such an agreement may have been based upon the debtors' schedules, which reflect a value for household goods, at $1,000.00. The debtors' furniture and appliances, normally a

subset of household goods, cannot be so valuable as to make Commonwealth oversecured. At best, Commonwealth could hold a $16,000.00 allowed secured claim. However, Commonwealth does not assert any value for the personalty securing its lien.

For this reason, I shall value the allowed secured claim of Commonwealth to be only $15,000.00 less whatever recoupment amount is applied to this claim.

## II

■ The question then becomes how to apply the $2,000.00 recoupment to which Commonwealth concedes the debtors are entitled. Not surprisingly, since the debtors' confirmed chapter 13 plan calls for less than full payments to unsecured creditors, the debtors argue that the secured portion of the claim is reduced by $2,000.00 while Commonwealth argues that it is only the unsecured portion that is reduced.

The only decision of which I am aware which addresses this issue is *In re Jablonski*, 70 B.R. 381, 390 (Bankr.E.D.Pa.1987). That decision, relying upon *Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 932–33 (3d Cir.1982), concluded that the TILA recoupment should reduce only the secured portion of a creditor's claim. Respectfully, I must disagree.

In *Griggs*, one issue facing the Court of Appeals was whether the statutory civil penalty imposed by TILA, 15 U.S.C. § 1640, could be set off against the debt owed to the creditor which had already been discharged in bankruptcy. After concluding that the TILA statute had "important penal characteristics" the Third Circuit held that a "set off of bankruptcy-discharged debts owed a creditor would interfere with the penal purpose of the Act." *Id*, at 932.

This civil penalty must be asserted within one year of the occurrence of the statutory violation. "Recoupment" by contrast is "in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir.1944) (quoting *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935)). As applied to TILA, recoupment is purely defensive and can be raised only if the creditor seeks payment from the borrower. The filing of a proof of claim by the creditor is an action to collect a debt which then permits the debtor to raise

TILA recoupment, even beyond the one year statute of limitations posed. *Werts v. Federal National Mortgage Ass'n.*, 48 B.R. 980, 983–84 (E.D.Pa. 1985); *In re DiCianno*, 58 B.R. 810, 813 (Bankr.E.D.Pa. 1986). *In re Hanna*, 31 B.R. 424 (Bankr. E.D.Pa.1983). Although the recoupment defense can be raised more than one year after the federal statute was violated, it cannot produce an affirmative recovery; it can only abate or reduce the debt. *See Stulz v. Boswell*, 307 Pa.Super. 515, 453 A.2d 1006 (1982); 4 *Collier on Bankruptcy*, ¶ 503.03 (15th ed. 1987). And while the addition of a statutory recovery in TILA was designed, in part, as a penalty, the concept of recoupment is derived from equitable concerns which also must be considered:

> Recoupment goes to the foundation of the plaintiff's claim; it is available to a defense although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim survives as long as the cause of action upon the claim exists. It is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.

*Pennsylvania R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir.1941) *cert. denied* 316 U.S. 676, 62 S.Ct. 1047, 86 L.Ed. 1750 (1942): *Accord Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689 (1980).

Applying TILA recoupment in such a way as to reflect both its penal and equitable components, I conclude that its application must reflect the bifurcated nature of the creditor's claim. Since recoupment is being asserted against a proof of claim which is being bifurcated into secured and unsecured components, the recoupment sum should also be bifurcated in the same proportion.

Such a result does not violate the holding of *Griggs*. A creditor is not being permitted to set off against a discharged debt because the debt is not yet discharged and

recoupment differs from set off. *In re Monongahela Rye Liquors.* Indeed, this issue cannot arise after discharge since a creditor would be forbidden to assert any prepetition claim. 11 U.S.C. § 524.[6] Moreover, had the recoupment defense been successfully raised prior to bankruptcy, the result would have been to reduce only the unsecured portion of the claim.

Therefore, it is both fair and sufficiently penal to bifurcate the recoupment sum. Here, the allowed secured claim of $15,000.00 is seventy-nine (79%) percent of the total prepetition debt of $19,000.00. Seventy-nine (79%) percent of $2,000.00 yields the sum of $1,580.00. Therefore, recoupment will be assessed against Commonwealth's claims as follows: Commonwealth holds an allowed secured claim of $13,420.00 and an allowed unsecured claim of $3,580.00.

An Order to this effect will be entered.

---

**6.** A discharge would create an injunction against *in personam* but not *in rem* litigation on prepetition claims. 11 U.S.C. § 524(a)(2). Apparently, however, in Pennsylvania, TILA recoupment defenses are not permitted in foreclosure actions. *New York Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 524 A.2d 951 (1987). *Contra In re Dangler,* 75 B.R. 931 (Bankr.E.D.Pa.1987). Thus, a TILA recoupment issue would not arise, at least in Pennsylvania, after a bankruptcy discharge.