In re Clifton **DEMBO**, Jr., Debtor.

Clifton **DEMBO**, Jr., Comprehensive Foreclosure Services, Plaintiffs,

v.

**UNITED STATES** of America, DEPARTMENT OF The TREASURY, INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 90–12653S.
Adv. No. 90–0819S.

United States Bankruptcy Court,
E.D. Pennsylvania.

April 22, 1991.

---

Jana Lyn Weisman, Paul Brooks, Community Legal Services, Philadelphia, Pa., for debtor.

John Sternberg, Lipman, Freiberg, Comroe & Hing, Philadelphia, Pa., for CFS.

Kathryn J. Brown, Trial Atty., Tax Div., Justice Dept., Washington, D.C., Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa., for IRS.

Arthur P. Liebersohn, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant adversary proceeding presents two questions relating to the ef-

fect of invocation of 11 U.S.C. § 506(a), (d) upon a federal tax lien concerning which no proof of claim has been filed: (1) May a debtor utilize 11 U.S.C. § 506(a), (d) to bifurcate a secured creditor's interest in the estate's interest in property when no proof of claim has been filed by or on behalf of that secured creditor? and (2) May § 506(a), (d) be utilized to bifurcate a federal tax lien? Since we answer the first question in the negative, our affirmative answer to the second question does not impact upon the instant federal tax lien.

### B. FACTUAL AND PROCEDURAL HISTORY

Clifton Dembo, Jr. ("the Debtor") filed a voluntary individual Chapter 7 bankruptcy case on June 27, 1990. On October 30, 1990, the Debtor instituted the instant adversary proceeding, pursuant to 11 U.S.C. § 506(a), (d), to determine the respective interests, in reference to the Debtor's home at 2112 South 57th Street, Philadelphia, Pennsylvania 19143 ("the Home"), of (1) Defendant COMPREHENSIVE FORECLOSURE SERVICES ("CFS"), the assignee of a mortgage dated November 9, 1984, and recorded June 7, 1985, given by the Debtor to the United States Department of Housing and Urban Development ("HUD"); and (2) the UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE ("IRS"), which filed a federal tax lien against the Debtor on November 7, 1988.

The Debtor was granted a Discharge on January 15, 1991. Thereafter, on March 27, 1991, the Debtor attempted to convert this case to a case under Chapter 13.[1] The Debtor has pending a motion, also filed on March 27, 1991, and listed for a hearing on May 7, 1991, in which he seeks to vacate his discharge order. *But see In re Dinh*, 90 B.R. 743 (Bankr.E.D.Pa.1988). It appears that the Debtor's only recourse to

---

1. In fact, the case was closed on February 16, 1991. Since the closing of the case was in error in view of the pendency of this proceeding, the case was reopened by the court *sua sponte* on March 6, 1991.

Chapter 13 relief may be through the filing and pursuit of a separate new Chapter 13 case.

After two continuances, this proceeding was listed for trial on a must-be-heard basis on March 7, 1991. On that date, the three interested parties (the Debtor, CFS, and IRS) agreed to submit the proceeding on a short Stipulation of Facts to be filed by March 21, 1991, and simultaneous submission of opening and reply Briefs on or before April 4, 1991, and April 11, 1991, respectively.

The Stipulation of Facts provides that the value of the Home, presumably at the crucial date of the filing of the case, *see In re Mays*, 85 B.R. 955, 962 (Bankr.E.D.Pa.), *aff'd*, C.A. No. 88–4306, 1988 WL 81716 (E.D.Pa. August 1, 1988), was $20,000. The parties also agreed that CFS had obtained a pre-petition foreclosure judgment of $30,252.75 against the Debtor and that IRS's tax lien was in the amount of $1,414.32. It was also recited that neither IRS nor the Debtor filed any proof of claim on IRS's behalf.[2]

These facts, like the text of the Debtor's Complaint, which merely requests that we determine that the claims of both CFS and IRS total no more than $20,000, suggest that the crux of the dispute over the status of IRS's lien, in the context of a § 506 complaint, is between CFS and IRS, and that the Debtor is a bystander whose Home would be subject to the same total of $20,-000 of liens irrespective of the outcome of this proceeding. However, CFS filed no brief; the IRS filed only a very short opening brief; and only the Debtor filed both an opening and a reply brief.

## C. DISCUSSION

### 1. THE ABSENCE OF A PROOF OF CLAIM AGAINST IRS PRECLUDES RELIEF AGAINST IT UNDER § 506.

The instant proceeding is based upon 11 U.S.C. § 506(a), (d), which read as follows:

**§ 506. Determination of secured status**

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition of or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

.     .     .     .     .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

The first issue is whether the failure of any party to file a proof of claim on behalf of the IRS precluded the filing of a § 506 complaint against it. 3 COLLIER ON BANKRUPTCY, ¶ 506.07, at 506–73 to 506–74 (15th ed. 1990), describes the split of authority on this issue thusly:

Most courts do not require that a proof of claim be filed prior to lien avoidance under section 506(d). Thus, complaints or applications to determine the status of

2. Ironically, there is no positive statement in the sparse record that CFS has filed a proof of claim, either, and we have located none in the main case file. Nor is there any positive statement quantifying any such potential claim. However, in light of CFS's failure to plead or

aver any facts in addition to the contents of the Stipulation, which implies that it has in fact filed a proof of claim subjecting it to § 506 relief, we will deem CFS to have filed a proof of claim in the total amount of the judgment amount, *i.e.*, $30,252.75.

the relevant claim under section 506(a), or similarly styled pleadings, have been accepted as the requisite request under section 506(d) for allowance of disallowance. It is important to note that all pleadings so accepted provided for actual notice to the lienholder and an opportunity for a hearing. The mere scheduling of the relevant claim as unsecured is not adequate. This appears to be the better view because among other reasons, lien avoidance under section 506(d) can occur for reasons unrelated to disallowance of the underlying claim.

A minority view does require that a proof of claim be filed prior to lien avoidance. It thus appears that in order to avert delays in promulgating chapter 11 or chapter 13 plans which must treat disputed secured claims or in selling property which is subject to disputed liens, a party in interest may be required to bring an adversary proceeding pursuant to Bankruptcy Rule 7001 "to determine the validity, priority, or extent of a lien or other interest in the property" if proof of the relevant claim has not been filed (and the time to so file has not expired) rather than attempt to proceed under section 506(d). [omitted]

17. *In re Brown*, 73 B.R. 740 (B.Ct., W.D.Wis.1987); *Duncan v. Gunter Insurance Agency (In re Duncan)*, 60 B.R. 345 (B.Ct., M.D.Ala.1986); *Stair v. Shumate (In re Shumate)*, [42 B.R. 462,] 11 C.B.C.2d 597, 601–2 (B.Ct., E.D.Tenn.1984); *Brager v. Blum (In re Brager)*, [28 B.R. 966,] 8 C.B.C.2d 1039, 1040–41 (B.Ct., E.D.Pa.1983); *Yoder v. United States (In re Yoder)*, 32 B.R. 777, 779–80 (B.Ct., W.D.Pa. 1983), *aff'd in relevant part*, 48 B.R. 744 (W.D.Pa.1984).

18. *Brager v. Blum (In re Brager)*, [28 B.R. 966,] 8 C.B.C.2d 1039, 1040 (B.Ct., E.D.Pa.1983) (complaint by debtor to determine the status of a secured claim under 11 U.S.C. § 506(a)); *Brace v. State Farm Mutual Automobile Ins. Co. (In re Brace)*, 33 B.R. 91 (B.Ct., S.D.Ohio 1983) (adversary complaint to determine status of secured claim); *Yoder v. United*

*States (In re Yoder)*, 32 B.R. 777, 780 (B.Ct., W.D.Pa.1983), *aff'd in relevant part*, 48 B.R. 744 (W.D.Pa.1984) (action under 11 U.S.C. § 506(a)).

19. *Pierce v. Woodard*, 29 B.R. 612, 614 (B.Ct., E.D.N.C.1983). *See also In re Hotel Associates, Inc.,* [3 B.R. 340,] 1 C.B.C.2d 819 (B.Ct., E.D.Pa.1980). Similarly, the mere treatment in a chapter 13 plan of a claim as unsecured cannot void a lien in the absence of proper objection to the claim. *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 557–9 (5th Cir.1985).

20. *See Painter v. First Federal Savings and Loan Association of South Carolina (In re Painter)*, 84 B.R. 59 (B.Ct., W.D.Va.1988); *In re Henninger*, 53 B.R. 60 (B.Ct., W.D.N.Y.1985); *Everett v. Kirk Mortgage Co. (In re Everett)*, 48 B.R. 618, 619 (B.Ct., E.D. Pa.1985); *Samorajczyk v. United States* (In re Atoka Agricultural Systems, Inc.), [39 B.R. 474], 10 C.B.C.2d 787, 790 (B.Ct., E.D.Va.1984); *In re Hotel Associates, Inc.,* [3 B.R. 340,] 1 C.B.C.2d 819 (B.Ct., E.D.Pa.1980) (since no proof of claim had been filed, 11 U.S.C. § 502 could not yet be applied and, therefore, the action to avoid the lien was premature).

Although Collier characterizes the view that a proof of claim not be filed as "better," because § 506(a), (d) can be employed for reasons unrelated to a claim, other passages and earlier versions of commentary on this same Code section by Collier suggest to the contrary. As the language of 11 U.S.C. § 506(a) makes abundantly clear, the target of a § 506 proceeding is an "allowed claim" of an allegedly secured creditor. *See* 3 COLLIER, *supra*, ¶ 506.04, at 506–15 to 506–17, 506–21. It is difficult to understand how a security interest against a debtor, which passes through the debtor's case unaffected if no proof of claim on the creditor's behalf is filed, *see Estate of Lellock v. Prudential Ins. Co.,* 811 F.2d 186, 188 (3d Cir.1987); and *In re Fernwood Markets*, 76 B.R. 501, 503 (Bankr.E.D.Pa.1987), can be affected by the filing of a § 506 complaint if no proof

of claim has been filed on the creditor's behalf. The language of § 506(d)(2), added in 1984, appears to confirm the conclusion that an unlisted secured claim is unaffected by a § 506 complaint, and therefore passes through a bankruptcy case.

However, former Chief Judge Goldhaber of this court, in *In re Brager*, 28 B.R. 966, 967 (Bankr.E.D.Pa.1983), thusly provides a basis of reasoning for the so-called "majority rule:"

> the filing of debtors' complaint to determine the secured status of the third lienholder's claim constitutes a sufficient assertion of the third lienholder's claim and, therefore, the complaint itself triggers the application of section 506(a).

*Accord, In re Yoder*, 48 B.R. 744, 747 (W.D.Pa.1984); and *In re Shumate*, 42 B.R. 462, 466 (Bankr.D.Tenn.1984).

■ The reasoning of the *Brager* case is similar to that employed when a court deems a filing in bankruptcy court other than a proof of claim to be cognizable as an "informal proof of claim." *See In re Wilbert Winks Farm, Inc.*, 114 B.R. 95, 97 (Bankr.E.D.Pa.1990); and *In re Unger*, 70 B.R. 519, 521–23 (Bankr.E.D.Pa.1987). However, the "informal proof of claim" doctrine is an artificial one, undoubtedly derived to protect a bankruptcy novice who has expressed a clear desire to make a claim against the estate but has merely overlooked the significance of use of the formal claim process. We believe that it constitutes an unwarranted extension of the "informal proof of claim" doctrine to conclude that a pleading filed by a *debtor*, well aware of not only a desire to raise a claim but the formal claim process as well, can constitute an informal filing of a claim on behalf of a *creditor* who might not wish to make a claim against the estate.

In certain factual situations, it is virtually impossible to argue that a § 506 filing is the equivalent of the filing of a proof of claim. A proof of claim in a Chapter 7 case must be filed within 90 days after the first date set for the meeting of creditors.

Bankruptcy Rule ("B.Rule") 3002(c). A debtor has only thirty (30) days after the bar date to file a claim on behalf of a creditor. B.Rule 3004.[3] A § 506 complaint may apparently be filed at any time before a case is closed. *See In re Lewis*, 875 F.2d 53, 57 (3d Cir.1989). We believe that a § 506 complaint filed after the bar date, which could be as late as after a Chapter 13 confirmation order or, as in the instant case, after the entry of a Chapter 7 discharge order, should not effect a belated filing of a proof of claim at such a late juncture in a bankruptcy case.

■ Numerous cases espouse the so-called "minority rule" that the filing of a formal proof of claim is a prerequisite to the filing of a § 506 complaint. *See In re Painter*, 84 B.R. 59, 62 (Bankr.W.D.Va. 1988); *In re Henninger*, 53 B.R. 60, 62 (Bankr.W.D.N.Y.1985); and *In re Atoka Agricultural Systems, Inc.*, 39 B.R. 474, 476 (Bankr.E.D.Va.1984).

3 COLLIER, *supra*, ¶ 506.07, at 506–73 to 506–74 n. 20 *supra*, cites a decision of Chief Judge Goldhaber rendered subsequent to *Brager* in *support* of the "*minority* position." *In re Everett*, 48 B.R. 618, 619 (Bankr.E.D.Pa.1985). Judge King, formerly of this court, squarely followed the "minority position." *In re Hotel Associates, Inc.*, 3 B.R. 340, 342 (Bankr.E.D.Pa. 1980). Judge Fox of this court espoused the "minority position" in *In re Bender*, 86 B.R. 809, 812, 813 (Bankr.E.D.Pa.1988).

We also note that the prior version of Collier, quoted by Judge Fox with approval in *id.*, 86 B.R. at 812, stated unequivocally that, "in order for its lien to be avoided, either the holder or another person entitled to do so must file a proof of claim with respect to the holder's claim." 3 COLLIER ON BANKRUPTCY, ¶ 506.07, at 506–68 (15th ed. 1987). No explanation is provided by Collier as to why its *own* prior position is now relegated to the status of a "minority view," contrary to the "better" view.

---

**3.** This rule was amended on August 1, 1987, to provide a time limitation on the debtor's filing of a claim on behalf of a creditor where there had previously been no such limitation. This amendment may render the reasoning of *Brager*, which preceded the amendment, obsolete.

Furthermore, the Third Circuit Court of Appeals, in approving the use of § 506 generally in Chapter 7 cases in *Gaglia v. First Federal Savings & Loan Ass'n,* 889 F.2d 1304, 1309 (3d Cir.1990), states as follows:

> the Code expressly allows the debtor to file a proof of claim even if the creditor has chosen not to do so. 11 U.S.C.A. § 501(c). By doing so, the debtor can draw a creditor into the bankruptcy proceedings and invoke § 506(d). *[In re] Lindsey,* 823 F.2d [189,] at 191 [(7th Cir.1987)]. This indicates to us that § 506 was intended not only to protect creditors, but is also available as a debtor's remedy. *See id.* at 190–91.

This passage is appropriately argued by IRS as an apparent espousal of the so-called "minority position." Obviously, we are bound to follow the dictates of the Court of Appeals.

Finally, this court, in a decision rendered prior to *Gaglia, In re Taylor,* 96 B.R. 584, 592–93 n. 6 (Bankr.E.D.Pa.1989), stated as follows:

> We also note that the fact that the Proof of Claim recites arrearages only is more than a technical problem, and in itself precludes the Debtor's invocation of § 506(a). This Code provision can only be employed to attack a *proof of claim* of a creditor. *See* 3 COLLIER, *supra,* ¶ 506.04, at 506–15; and page 2 n. 1 *supra.* The Debtor could have resolved this problem by filing a proof of claim on behalf of FNMA, in light of FNMA's failure to file an actual proof of claim. *See* 11 U.S.C. § 501(c). His failure to do so would appear to independently require dismissal of this proceeding.

Thus, this court itself has clearly held that a failure to file a proof of claim for the entire amount of a secured creditor's claim bars a § 506 proceeding, even where the debtor has filed a "claim" for arrearages.

We believe that our general statement in *Taylor, supra,* 96 B.R. at 591, that it is appropriate to review the equities of the debtor's position in determining whether the debtor should be allowed to invoke § 506 in a given factual setting, is also relevant to the instant inquiry. We fail to see why a debtor which has not taken the time to file a proof of claim on behalf of a creditor should be able to utilize § 506 and draw a secured creditor into a bankruptcy case only to adversely affect that creditor's security interest against the debtor's property. A secured creditor should be able to assume that, if the debtor has not filed a proof of claim on its behalf within thirty days from the bar date, its security interest will pass through the bankruptcy case unaffected.

The language of § 506(a) clearly supports the reasoning of the so-called "minority position." The quasi-informal proof of claim reasoning of *Brager* is unpersuasive and appears obsolete. We find that the filing of a proof of claim is a prerequisite to the use of § 506 by a debtor. The stipulation by the instant Debtor that no proof of claim has been filed on behalf of the IRS therefore bars his prayer for relief against IRS in this proceeding.

## 2. A FEDERAL TAX LIEN MAY BE AFFECTED BY § 506.

The second issue, barely touched upon by the parties, is whether a federal tax lien may ever be avoided in any circumstances. There are two lines of reasoning supporting the notion that a federal tax lien, at least as to a nondischargeable federal tax obligation, may not be avoided: (1) application of the language of 11 U.S.C. § 522(c) (and particularly § 522(c)(2)(B) thereof), which provides as follows:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
>
> (1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;
>
> (2) a debt secured by a lien that is—
>
> (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not valid under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed; or

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

*See In re McCullough,* 122 B.R. 251 (Bankr.W.D.Pa.1990); and (2) the fact that a tax lien securing a nondischargeable tax debt may attach to all property of the debtor which is acquired post-petition purportedly renders the § 506 avoidance a "nugatory" act. *See* 11 U.S.C. § 522(c)(1); *In re Leavell,* 124 B.R. 535, 21 BCD 714, 717 (Bankr.S.D.Ill.1991); *In re Crawford,* 115 B.R. 381, 383 (Bankr.N.D.Ga.1990) (by implication); and *In re Frengel,* 115 B.R. 569, 571 (Bankr.N.D.Ohio 1989).

In response to these decisions, we note the presence of a large number of reported cases in which courts have indicated that federal tax liens may be avoided under § 506 without discussion of § 522(c) or the potential nondischargeability of the underlying federal tax liability. *See In re May Reporting Services, Inc.,* 115 B.R. 652, 657 (Bankr.D.S.D.1990); *In re National Financial Alternatives, Inc.,* 96 B.R. 844, 848 (Bankr.N.D.Ill.1989); *In re Audey,* 66 B.R. 52 (Bankr.W.D.Pa.1986) (overruled in *McCullough, supra* ); *In re Dente/Pender,* 60 B.R. 164, 165 (Bankr.M.D.Fla.1986); *In re Driscoll,* 57 B.R. 322, 327 (Bankr.W.D.Wis.1986); *In re Air Florida Systems, Inc.,* 50 B.R. 653, 656 (Bankr.S.D.Fla.1985); *In re Healis,* 49 B.R. 939, 940–41 (Bankr.M.D.Pa.1985); *In re Robinson,* 39 B.R. 47, 49 (Bankr.E.D.Va.1984); *In re Frost,* 19 B.R. 804, 807–08 (Bankr.D.Kan.1982); and *In re Crotty,* 11 B.R. 507, 509 (Bankr.N.D.Tex.1981).

This court previously stated that federal tax liens *may* be avoided under § 506 in *In re Evans,* 66 B.R. 506, 510 (Bankr.E.D.Pa.1986), *aff'd,* 77 B.R. 457 (E.D.Pa.1987), and it cited many of the foregoing cases favorably in *In re Blakey,* 78 B.R. 435, 437 (Bankr.E.D.Pa.1987). We perceive no compelling basis to retreat from the position which we espoused in those cases, *i.e.,* that federal tax liens, like all security interests, are subject to avoidance under § 506, because § 506, on its face, provides for no such exception. *See generally Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 126–28 (3d Cir.1990); *Gaglia, supra,* 889 F.2d at 1310–11; and *Lewis, supra,* 875 F.2d at 56 (limitations should not be read into the broad language of § 506).

We fail to see how § 522(c)(1) or (c)(2)(B) limits the scope of § 506. Section 522 of the Code relates directly to exempt property. Rights arising under § 522, such as § 522(f), are distinct from those arising under § 506. *See Mays, supra,* 85 B.R. at 960–62. Furthermore, § 522(c) addresses solely the issue of whether exempt property is subject to pre-petition liabilities and basically states that it is not unless the liability is nondischargeable. This is hardly a surprising concept. However, nondischargeability does not affect the right of a debtor to invoke § 506. Mortgages and other security documents create security interests which are themselves not dischargeable. Yet in *Wilson, Gaglia,* and *Lewis,* the Court of Appeals never stopped to consider whether its decision impacted upon a nondischargeable liability of the debtor. Avoiding a lien or a portion of a lien which otherwise attaches to specific property is a completely different concept from both survival of non-dischargeable debts and from consideration of exemptions.

The reasoning of cases such as *Leavell* seems to us to be overly concerned with speculation about the future impact of bankruptcy court decisions. It is not the function of a bankruptcy court to speculate about and rule upon all of the potential rights which might be invoked against debtors after a bankruptcy case has ended, such as the rights of IRS in collecting a nondischargeable debt. The important issue in deciding a § 506 issue is what the rights of the secured parties are as to certain specific property of the debtor as of a particular date (the filing date in a Chapter 7 case, *see Mays, supra,* 85 B.R. at

962). The Debtor may sell the Home the day after our decision and it therefore may be important to fix his creditors' interest against this particular property of his estate as of the date of his filing without regard to the effect of this decision in the future.

We therefore do not consider it productive to ponder the rights of IRS against the Debtor's property pursuant to § 522(c)(2)(B) after his instant bankruptcy case is closed. Likewise, we do not join the *Leavell* court in dwelling upon IRS's potential post-bankruptcy rights against the Home or any other property of the Debtor.[4] Our only task, in the instant § 506 proceeding, is to measure the extent of the interests of CFS and IRS in the interest of the Debtor's estate in the Home as of the date of the filing of his Chapter 7 case.

### D. CONCLUSION

Therefore, although we find no impediment to doing so generally, we find that the failure of any party to file a proof of claim on behalf of IRS in the instant factual matrix precludes the avoidance of its secured interest in the Home in this proceeding. IRS retains a $1,414.31 federal tax lien against the Home. The secured portion of CFS's proof of claim is therefore limited to $20,000 minus $1,414.31, or $18,585.69. The unsecured position of CFS's claim is measured at $11,667.06. *See* page 197 n. 2 *supra.*[5]

An Order will be entered which is consistent with this conclusion.

### ORDER

AND NOW, this 22nd day of April, 1991, upon consideration of the Stipulation of Facts which interested counsel agreed should constitute the entire record of this proceeding and the Briefs submitted to the court by two of the parties hereto, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff, CLIFTON DEMBO, JR. ("the Debtor"), and against Defendant COMPREHENSIVE FORECLOSURE SERVICES ("CFS").

2. Judgment is entered in favor of Defendant UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE ("IRS") and against the Debtor.

3. The allowed secured claim of CFS against the Debtor's home at 2112 South 57th Street, Philadelphia, Pennsylvania 19143 ("the Home") is fixed at $18,585.69. The allowed unsecured claim of CFS against the Debtor is fixed at $11,667.06. IRS retains a secured claim of $1,414.31 against the Home.

---

**4.** We also observe that the record includes no facts upon which we can ascertain, and no statement as to whether, IRS's instant underlying claim against the Debtor is in fact nondischargeable or not.

**5.** We observe, as we did in *In re Blakey,* 76 B.R. 465, 472–73, *modified,* 78 B.R. 435 (Bankr.E.D. Pa.1987), that we are surprised to note the Debtor's failure to employ the usual strategy of reducing the mortgage lien as much as possible on the ground that the governmental lien can be dealt with more easily otherwise out of bankruptcy. Furthermore, IRS's federal tax liability may well be nondischargeable, *but see* page 199 n. 3 *supra,* and its lien may attach to the Debtor's property post-petition irrespective of whether it is affected by § 506. This would not be true as to CFS's lien. Therefore, it would appear to be in the Debtor's best interest to "use" the federal tax lien to reduce CFS's lien. Consequently, it seems to us that it would have been in the Debtor's best interest to have supported the position of IRS in this proceeding.