**In re Maggie Shipley ROGERS, Debtor.**

**C. Kenneth STILL, Trustee, Plaintiff,**

v.

**STATE OF TENNESSEE, DEPARTMENT OF REVENUE, Defendant.**

**Bankruptcy No. 1–84–00864.**
**Adv. No. 1–85–0106.**

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 21, 1986.

William M. Foster of Hall, Haynes, Lusk & Foster, Chattanooga, Tenn., for plaintiff.

Charles T. Moore and Howard E. Herndon, Jr., Chattanooga, Tenn., for defendant.

Phillip C. Lawrence of Poole, Lawrence, Thornbury, & Stanley, Chattanooga, Tenn., for debtor.

RALPH H. KELLEY, Bankruptcy Judge.

The chapter 13 trustee sold real property belonging to the debtor. The property was subject to the mortgage of Citizens Savings and Loan, and before confirmation of the Chapter 13 plan, was subject to the State of Tennessee's tax lien. The question is how much, if any, from the sale proceeds must be paid to the State to satisfy the debt secured by its tax lien. The facts are as follows.

Maggie Shipley Rogers, the debtor, operated a grocery store in this county. She was obligated to collect and pay sales tax to the State but failed to do so. In May, 1983, the State filed a notice of tax lien to secure payment of the unpaid sales tax. A year later, the debtor filed a bankruptcy petition for relief under chapter 13. The tax debt to the state was scheduled as approximately $9,000 but subject to dispute. The schedules did not specifically classify the claim as unsecured, priority, or secured, but it was included in the total of priority claims. The notice sent to the State said that the claim was scheduled as priority. The notice pointed out that allowance of a claim depended on filing of a proof of claim and that proof of a secured claim had to include proof of the lien.

The State filed a proof of claim for $6,201.17. This amount included the unpaid tax and interest earned up to July 20, 1984. The statement of account showed $2,343.86 as a non-claimable liability.

The proof of claim included a copy of the notice of tax lien.

The debtor's confirmed chapter 13 plan provided for payment of priority claims in full. It provided a regular monthly payment on the claim of Citizens Savings and Loan as a secured claim. The plan did not provide for payment of the State's tax claim as a secured claim.

The time for filing claims expired, and the chapter 13 trustee filed a motion to

allow claims. It included the State's tax claim and identified it as a priority claim.

Citizens Savings and Loan requested that it be allowed to foreclose on the real property. Rather than allowing foreclosure, the chapter 13 trustee was allowed to auction the real property. The property was sold on May 1, 1985, but the purchasers refused to go through with the sale. However, other purchasers were found, and the court entered an order confirming the sale on June 20, 1985.

Between the auction and the eventual sale, the State amended its proof of claim to increase the amount from $6,201.17 to $9,305.35. The amended proof of claim adds $1,280.51 in penalties that were apparently included in the nonclaimable liability on the statement of account with the original proof of claim.

The amended claim also includes an additional $1,823.67 in interest accrued from the date of the original claim to June 20, 1985.

### Discussion

The first question raised by the facts is whether the State had an allowed secured claim.

■ Contrary to the State's argument, filing of a proof of claim is required for a secured claim to be allowed in a chapter 13 case.[1] The chapter 13 trustee regularly has more than 3,000 chapter 13 cases pending. He could not operate efficiently and safely under his bond if he were required to make payments on claims for which no proof of claim had been filed.

The State's proof of claim was timely filed and included a copy of the notice of lien to show that the claim was secured. The proof of claim was not marked as secured, priority, or unsecured, but paragraphs 7 and 8 were sufficient to classify the claim as secured. In this regard, paragraphs 7 and 8 of the State's form parallel paragraphs 9 and 10 of Official Form 19. Based on the State's proof of claim its claim was allowable as secured.

■ "Allowed" secured claim is, however, a term of art that involves more than the filing of a proof of claim. Under § 506 a claim is allowed as secured up to the value of the collateral or the amount of the debt, whichever is smaller. In other words, if the debt is undersecured, then the creditor has an allowed secured claim only up to the value of the collateral. 11 U.S.C. § 506(a).

If the value of the collateral is more than or equal to the debt, the claim is an allowed secured claim for the full amount of the debt. To the extent the value of the collateral is more than the debt, the creditor is also entitled to collect interest earned on the claim after filing of the bankruptcy petition and reasonable fees, costs, and charges provided under the contract between the creditor and the debtor. 11 U.S.C. § 506(b).

■ Generally a chapter 13 plan will fix the value of the collateral or provide for full payment of the secured debt. The plan may also provide that a claim filed as secured will be treated as unsecured, but in that situation the plan itself or with the schedules should reveal why the claim is in fact not allowable as secured under § 506(a). There should be something in the record to indicate that the collateral no longer exists or is worthless or is not worth enough to secure the debt in question. In any of these situations, confirmation of the plan necessarily determines the amount of the creditor's allowed secured claim. If the plan is confirmed and payments on the

---

1. To the extent Rule 3002(a) appears to say that allowance of a secured claim in a chapter 13 case does not require the filing of a proof of claim, it is inconsistent with the statutes and ineffective. 11 U.S.C. §§ 501 & 502; 28 U.S.C. § 2075. The Advisory Committee Note to Rule 3002(a) suggests that it was not intended to make secured claims allowable in chapter 13 cases without the filing of a proof of claim. The drafters apparently were concerned with the effect of a chapter 7 discharge on the lien when the secured claim was not allowed only because of failure to file a proof of claim.

claim are completed, the secured debt is satisfied and the lien must be released.[2]

Any other result would make chapter 13 futile for debtors. A debtor could not know the result of a successful chapter 13 plan if, after its completion, secured creditors paid during the plan could demand additional payments for the release of their liens.

■ When a priority claim is also secured, the confirmation requirements for both a priority claim and an allowed secured claim apply. *In re Frost*, 19 B.R. 804 (Bankr.D.Kan.1982). This can be confusing. The difference it makes is whether the holder of the priority claim is paid interest on the debt to the extent the claim is also an allowed secured claim. 11 U.S.C. §§ 506, 1322(a)(2) & 1325(a)(1) & (a)(5)(B). Compare 11 U.S.C. § 1322(a)(2) and 1129(a)(9).[3]

Since the plan in this case did not treat the State's claim as secured, perhaps it should not have been confirmed, but that is not the question before the court. The question is how confirmation affected the State's lien or the amount of the debt it secures.

The first question is whether confirmation of the plan treating the State's claim as a priority unsecured claim in effect avoided the State's lien by forever classifying the claim as unsecured.

The State had the opportunity to object to confirmation of the plan for failure to treat its claim as secured. The court cannot possibly examine every claim in every case to be sure that the plan properly classifies it as regular unsecured, priority unsecured, or secured. Moreover, the court is entitled to presume that secured creditors will protect their claims. It can be argued that by failing to object to con-

firmation the State chose to have its claim treated as an unsecured claim. Some courts might reach the conclusion that the State's claim became unsecured when it failed to object to confirmation of the plan or to allowance of its claim as unsecured. *In re Russell*, 29 B.R. 332 (Bankr.E.D.N.Y. 1983); *In re Pettit*, 18 B.R. 832 (Bankr.S.D. Ohio 1982).

■ This court hesitates to agree. A debtor should not be able to convert a claim filed and allowable as secured into an unsecured claim simply by choosing to treat it as unsecured in the chapter 13 plan. The situation is different if the plan or schedules reveal a reason under § 506 for not allowing the claim as secured. But the plan or schedules in this case did not and could not reveal any reason for treating the State's claim as entirely unsecured.

■ In the circumstances of this case, the court will not treat the State's claim as totally unsecured. Neither the plan nor the schedules revealed any reason why the claim should be treated as unsecured. There were no other objections to the claim. The State is not trying to enforce its lien after the completion of payments to it under the plan. Thus, the State had an allowed secured claim for the amount in which it was filed. 11 U.S.C. § 502(a). The question is whether the State can increase the amount of its allowed secured claim and that depends on whether the amendments should be allowed.

■ The court will deny the amendment to add the penalty that was deleted from the original proof of claim. An allowed secured claim is like any other claim in that it cannot automatically be amended after the time for filing claims has expired. By explicitly deleting the penalty from the original claim, the State showed its intent

---

**2.** The procedure for allowance or disallowance under § 506(d) is subsumed in the confirmation process. There may be a request for valuation under Rule 3012 as part of the confirmation process but a separate request for allowance or disallowance under § 506(d) is not needed. Confirmation must determine the amount in which a secured claim dealt with by the plan is an allowed secured claim under § 506(a).

**3.** Unlike chapter 11, a priority claim in a chapter 13 plan need not be paid with interest in order to pay the "present value". The chapter 13 plan need only provide for full payment of the amount of the claim without any interest.

not to collect the penalty. The State cannot add the penalty back to the prejudice of the debtor or other creditors now that the collateral appears to be worth enough to pay the claim with the penalty.

■ The amendment to add the postpetition interest is also a late amendment, but should perhaps be allowed. It appears that the collateral was probably worth more than the full amount of the original claim. If the plan had originally provided for a sale of the collateral, the State would have been entitled to the claim plus postpetition interest up to the time of the sale. 11 U.S.C. § 506. The proof of claim, however, need not have included a request for payment of the postpetition interest in order for it to be paid from the sale proceeds. The amount to be paid on the claim would be determined only after the sale. The plan has in effect been modified to provide for sale of the collateral. The court will allow the postpetition interest for this reason and also because the plan's failure to treat the claim as secured was not justified and apparently happened through confusion or mistake.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.