**In re Lawrence WILKINS, and Juanete Wilkins, Debtors.**

**Bankruptcy No. B85-2426.**

United States Bankruptcy Court, N.D. Ohio, N.D.

March 24, 1987.

Jeffrey W. Brader, Cleveland, Ohio, for debtors.

Myron E. Wasserman, Cleveland, Ohio, Trustee.

Lee R. Kravitz, Cleveland, Ohio, for Ford Motor Credit Co.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter came on for hearing upon the motion of the Debtors for valuation of certain secured property. Due notice was properly made upon all parties entitled thereto. Upon review of the pleadings and argument of counsel, the following constitutes the findings of the Court pursuant to Rule 7052, Bankr. Rules:

### I.

The Debtors caused to be filed their joint petition for relief under Chapter 13 on September 27, 1985. Therein, their schedules of indebtedness reflected, *inter alia*, a secured debt in the amount of $6,026.00 owed to the Ford Motor Credit Company (FMCC) relating to their purchase of a 1984 Ford Escort automobile. A timely proof of claim was filed by FMCC in the amount of $5,426.08, with interest at 14% per annum, regarding this purchase. Subsequently, the Debtors submitted their proposed Plan which allowed a 100% repayment to secured creditors and, without objection, such Plan was confirmed on November 1, 1985.

Following Plan confirmation, the Trustee filed a motion for the allowance of claims, which was granted by the Court on April 7, 1986. Such motion included the claim of FMCC, among others, and required any objections to be filed within thirty (30) days following Court approval. No objections were filed within the required thirty-day period. Further examination by the Trustee discerned feasibility problems, causing the Trustee to file a motion for the Court to determine the Plan's feasibility. On May 13, 1986, the Debtors filed the present Motion For Valuation Of Security respecting the FMCC claim, to which FMCC objected and giving rise to this contested matter.

### II.

In support of its motion to value security, the Debtors contend (1) that the proper value of the vehicle is the wholesale value established; (2) that the proper valuation date is the confirmation date; (3) the secured portion of FMCC's debt is entitled to a discount factor; and (4) finally, that the Debtors may value the security post-confirmation. In response, FMCC's objection contends (1) the Debtors failed to value or otherwise indicate an intent to value FMCC's collateral at the time of petition filing; (2) the Plan, as confirmed, proposes to pay FMCC 100% of its claim through the Plan; (3) that the Debtors procedurally cannot value the collateral post-confirmation, pursuant to 11 U.S.C. 506; and (4) the Debtor's motion to value collateral fails to properly value as it suggests no value nor provides any supporting appraisal in support of such valuation.

### III.

In view of the several aforementioned contentions of the respective parties, the principal issue for resolution is whether a debtor can seek to value collateral once a Plan has been confirmed. In addressing this issue, the following statutory provisions are relevant:

§ 502. Allowance of claims or interests.

(a) A claim or interest, proof of which is filed under section 501 of this title [11 U.S.C. § 501], is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under Chapter 7 of this title [11 U.S.C. § 701 et seq.], objects. 11 U.S.C. § 502(a)

§ 506. Determination of secured status.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff ... and is an unsecured claim to the extent that the

value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose. 11 U.S.C. 506(a) and (b).

§ 1322.   Contents of plan.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principle residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. 11 U.S.C. 1322(b)(2).

§ 1325.   Confirmation of plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. 11 U.S.C. 1325(a)(5)(B)(i) and (ii).

## IV.

In reaching a resolution of this matter, an examination of the record is beneficial. The Plan allowed, in addition to priority payments required by § 1326, dividends to secured creditors in the amount of "100% of secured claims duly proved and allowed." Following such distribution to secured creditors, unsecured creditors whose claims are duly proved and allowed are to receive a 5% dividend.

A hearing on Plan confirmation initially was scheduled for January 30, 1986. The notice which announced such hearing and was served upon all entitled parties indicated in relevant part:

If written objections to confirmation are filed, a special hearing will be set and all affected entities shall be notified of the time and place of such hearing ...

Unless a different percentage is stated below, the plan proposes to pay all creditors 100% of their claims as filed and as allowed by the Court ...

In view of the provisions stated above, no written objections were made relative to the plan.[1] An order confirming the Plan was entered on November 6, 1985.

Of further relevance to a determination of this matter are certain contents of the Debtors' Chapter 13 Statement. Therein, the debt claimed by FMCC was stated by the Debtors as an undisputed $6,026.44, for a 1984 Ford Escort. In the "Personal Property" section of the Chapter 13 Statement, the subject vehicle again was listed, with no present market value stated.[2] This Statement was filed with the Debtors' voluntary petition on September 27, 1985, and the record is silent to reflect where the Statement was ever amended. Subsequently, on October 10, 1985, FMCC caused to be filed its "Proof of Claim; Acceptance or Rejection of Plan." Such claim indicated a net principal amount due of $5,426.08. FMCC further indicated on its claim that "the fair market value of the property on which the claimant has a lien is

---

1. An oral objection to confirmation of the Plan was made by the mortgagee holding a first mortgage on the Debtors' personal residence; however, such objection was resolved by those parties and evidenced by this Court's order of November 4, 1985.

2. Debtors claimed a $2,000.00 exemption.

$5,000.00." Following that valuation, FMCC indicated its acceptance of the Plan and stated, "We request interest at the A.P.R. rate of 14%."

A motion to allow claims was filed by the Chapter 13 Trustee on April 3, 1986. Therein, FMCC was listed as having a secured claim in the amount of $5,426.08. Thereafter, this Court granted the Trustee's oral motion for a hearing to examine the Plan's feasibility, and the instant matter ensued.

Presently, the Debtors seek to value the collateral (Ford Escort) to determine the extent of FMCC's secured interest under § 506(a). The precipitating event for this motion was the Trustee's motion to allow claims which was filed post-confirmation. Such motion to allow claims included the claim of FMCC and required all interested parties to file written objections, if any, within thirty days following court approval. No written objections were filed within the aforesaid time period.

■ Among its several contentions, the Debtors state (Supporting Brief at p. 2) that they learned "[T]he claim of FMCC for contract interest at 14% was first brought to [their] attention by the Order allowing the Trustee's oral Motion for Re-examination of the feasibility of Debtors' Plan." Such contention is not supported by the record. The docket clearly indicates that this Court entered an order regarding a feasibility hearing on April 7, 1986. The proof of claim of FMCC, setting forth its claim of $5,426.08 and requesting interest at 14%, was filed on October 10, 1985, approximately eight months prior to this Court allowing a feasibility hearing. Contrary to the Debtors' intimation that FMCC's proof of claim had to be "provided" to them, such belief is incongruous with the requirements of Rules 3002(b) and 5005, Bank. Rules. Further, Rule 3001(f) expressly provides, "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

Although the Debtors cite multiple issues for the Court's resolution herein, the dispositive and principal issue is when should valuation occur in the overall scheme of a Chapter 13 case. Of significant interest, the Debtors have asserted equivocal positions in this regard (Debtors' Brief at pp. 3–4). At one point, the Debtors contend "[t]he proper date to fix for the valuation of the collateral is the confirmation date of the Plan." However, they later state that they "may move for the valuation of security when the question arises," while averring that there exists no time limitation on such ability. *(Id.).* As indicated above, the Debtors scheduled FMCC's claim at $6,026.44. In their attendant Chapter 13 Statement, they failed to include a fair market value for the collateral, although they fully described it and claimed an exemption therefor. Approximately three weeks after petition filing FMCC filed its claim asserting its secured interest. The Debtors never objected to the claim of FMCC. Even post-confirmation, in April of 1986 when the Trustee filed his motion to allow claims, requiring objections to be filed within thirty days of approval thereof, the Debtors still filed no objection to FMCC's claim.

As heretofore stated, Rule 3001(f) provides that a properly executed and filed claim constitutes prima facie evidence of the validity and amount of the claim. The Debtors have presented no credible evidence to overcome such such construction. In pertinent part, Rule 3007 provides: "An objection to the allowance of a claim shall be in writing and filed with the court." Debtors failed to comply. Most remarkably, the Notice of the First Meeting of Creditors and Hearing on the Confirmation of Plan significantly provides: "unless a different percentage is stated below, the plan proposes to pay all creditors 100% of their claims *as filed* and as allowed by the Court" (emphasis added). In this regard, § 502 clearly provides that "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." § 502(a).

■ The valuation of security is addressed procedurally in Rule 3012, Bankr. Rules:

The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice ...

The above rule implements § 506(a) of the Code regarding the valuation of a secured claim in order to determine the extent to which it is secured and the extent to which it is unsecured. More importantly, § 506(a) addresses the valuation from a perspective of when it should occur. In relevant part § 506(a) states:

Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. 11 U.S.C. § 506(a).

The purpose for the valuation in the present situation was to benefit the confirmation of the Debtors' Plan. Section 506(a) directs that the value of the interest of the creditor in the estate's interest in the property on which the creditor has a lien is to be determined in conjunction with the hearing on the confirmation of the Chapter 13 Plan required to be conducted by the Court under § 1324. Collier, *Bankruptcy* (15th ed. 1986), ¶ 1300.73[e]. At or prior to the confirmation hearing, all parties are entitled to adduce evidence to establish the fair market value and the extent of the secured claim. *In re Crockett*, 3 B.R. 365, 1 C.B.C.2d 926 (B.Ct., N.D.Ill.1980). At bar, however, the Debtors' motion to value was filed several months post-confirmation and also beyond the deadline for objecting to allowed claims. The Debtors acknowledge the untimeliness of their motion, yet they seek redress under Rule 3008, Bankr. Rules.

■ Reconsideration of a claim that was previously allowed under Rule 3008 is a matter of discretion with the Court. Certainly, this rule recognizes the power of the Court to reconsider such claims, but such exercise is not warranted in all circumstances. The Advisory Note to Rule 3008, in part, addresses a situation peculiar to the present matter where it recognizes that "[a] proof of claim executed and filed in accordance with the rules ... is prima facie evidence of the validity and the amount of the claim notwithstanding a motion for reconsideration of an order of allowance," citing, *In re Goble Boat Co.*, 190 F. 92 (N.D.N.Y.1911). Moreover, the Debtors had sufficient notice of the fact that FMCC sought interest on its secured claim as could be discerned from FMCC's proof of claim which was filed shortly after the Debtors' petition was filed. Further, FMCC and other secured parties could reasonably rely upon the Debtors' Plan representation which expressed an intent to pay 100% on all secured claims. Section 1327(a) effectively binds the Debtors and Creditors to the provisions of a confirmed plan. FMCC, until the Debtors' instant motion, had no reason to believe that it would receive anything less than the full value of its claim, including post-petition interest, under the Plan. The Plan, as presented, fully comported with the several requirements of § 1325(a)(5)(B).

Herein, the Debtors caused to be filed a generalized statement to the effect that they would pay secured Creditors 100% of their allowed claims.

If a debtor submits a generalized statement that it will pay secured creditors in full—100%, creditors are entitled to interpret that statement as guaranteeing the payment of each and every part of the creditor's claim. If the debtor wishes to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions. Failing this, the debtor, as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. *In re Fawcett*, 758 F.2d 588, 591 (11th Cir.1985).

■ The matter, *sub judice*, is quite similar to the situation addressed by the *Fawcett* court. The present Debtors' Plan provision regarding secured Creditors was generalized, promised to pay all such allowed claims 100%, and the Debtors failed to detail any exceptions to their intent to pay secured Creditors in full. As such, any ambiguous terms in the Plan are to be interpreted against the party that drafted

**670**

them. (*Id.*, at 591, *citing C.A. May Marine Supply Co. v. Brunswick Corp.*, 557 F.2d 1163, 1165 (5th Cir.1977)).

In an earlier ruling the Sixth Circuit went to great lengths in describing the required procedural steps in a secured claim case as the one at part. Among a seven-step process, it is quite remarkable that the first and second procedures to be followed expressly concern collateral valuation:

1. Determine the present value of the collateral under the secured claim provisions of 1325.

2. Determine the amount allowable under applicable law to the creditor by virtue of the debtor's default including unpaid principal, finance charges, interest earned prior to filing but unpaid, etc.....
(*Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 430 (6th Cir.1982).

■ In the matter at bar, the Debtors valued at the beginning of their case the subject automobile in an amount of $6,026.44. They were content with that valuation until they discovered post-confirmation that there were feasibility problems with their Plan. Now they seek through the present motion to obtain a lower valuation to achieve a feasible Plan. As stated previously, and quite clearly in *Memphis Bank & Trust* above, the proper time for valuation is prior to Plan confirmation and not afterwards. Further, § 1325(a)(5)(B) requires the Court to confirm a plan for a secured creditor where the plan allows such creditors a retention of their liens and the value of their collateral "as of the effective date of the plan." 11 U.S.C. 1325(a)(5)(B).

■ It is well-established that a secured Creditor such as FMCC is entitled to post-petition interest on its secured claim. In this Circuit, since *Memphis Bank & Trust, supra,* § 1325 has been construed to require the payment of interest at the current market rate on an arrearage due under an automobile loan agreement. It also is clear that § 1325(a) directs this Court to confirm a plan only where the creditor will receive the present value of the amount due it. This has occurred. The subject Plan was confirmed with this appreciation

of § 1325(a)(5)(B). The premise for this construction is also to be found in this Circuit in *Memphis Bank & Trust, supra,* wherein the Court interpreted the pertinent Chapter 13 provisions to mean that a creditor in a situation such as the present one, theoretically made a new loan to the debtors at petition filing in the amount of the current value of the collateral and such creditor was entitled to interest at the current market value for similar loans at the time. *In re Colegrove*, 771 F.2d 119, 122–23 (6th Cir.1985). Such is allowed here.

There exists a split of authority regarding what rate of interest is appropriate in such situations. In view of the foregoing authorities, FMCC is entitled to interest on its claim. Concurring with the *Colegrove* decision, the most equitable interest rate in this matter is the prevailing market rate of interest on similar types of secured loans effective as of the Plan's effective date, with a maximum limitation on such rate not to exceed the specified contract rate of interest. (*Id.* at 123). Having so determined, an addressment of other issues advanced by the Debtors is unnecessary. The Debtors' motion to value the subject claim is denied.

IT IS SO ORDERED.