**In re Alvie Stanley LINKOUS, Debtor.**

**PIEDMONT TRUST BANK, Appellant,**

v.

**Alvie Stanley LINKOUS,
Debtor–Appellee**

**and**

**Laurence P. Morin, Trustee–Appellee.**

No. 90–00608.
Civ. A. No. 91–0011–D.

United States District Court,
W.D. Virginia,
Danville Division.

Feb. 14, 1992.

voke the order confirming the debtor's plan, to convert the case to Chapter 7, and to lift the stay. Piedmont contends that because of inadequate notice and procedural irregularities its claims have been improperly reduced. Both the trustee and the debtor have filed briefs in opposition.

## I. STANDARD OF REVIEW

The district court, when reviewing a bankruptcy court's decision, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013. The court reviews findings of facts subject to a clearly erroneous standards of review, *id.*, but a *de novo* standard applies to conclusions of law, *Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir.1990). No factual issues are disputed in this appeal and, therefore, the *de novo* standard applies.

## II. STATEMENT OF FACTS

Alvie Stanley Linkous ("Linkous") filed for Chapter 13 bankruptcy on April 26, 1990. Linkous had two loans outstanding from Piedmont. The Chapter 13 plan stated that there was an $18,000 loan secured by a mobile home and provided for the payment of $6,000 as a secured debt because the value of the mobile home was $6,000 with the remaining $12,000 unsecured. The second loan was for $4,000 and was secured by an automobile. The plan provided for similar treatment with $1,000 treated as secured and $3,000 as unsecured. The plan further provided for creditors to retain their liens only to the extent that the debt was secured and for a 10% dividend on unsecured claims.

In accordance with Federal Rule of Bankruptcy Procedure (hereinafter "Rule") 3015, Piedmont received a completed copy of Local Form 16.1, which is intended to serve as a summary of the plan, along with a notice that set the bar date for filing claims as September 4, 1990, provided for a meeting of creditors on June 6, 1990, and a confirmation hearing on June 20, 1990.

William F. Stone, Jr., Martinsville, Va., for appellant.

Ricky G. Young, Williams, Luck & Williams, Martinsville, Va., for debtor.

Laurence P. Morin, Lynchburg, Va., trustee.

## MEMORANDUM OPINION

KISER, District Judge.

This case is before me on appeal from the Bankruptcy Court. Piedmont Trust Bank ("Piedmont") has appealed the Bankruptcy Court's denial of its motions to re-

Piedmont did not attend the creditors' meeting held on June 6, 1990 or the confirmation hearing held on June 20, 1990. Without a motion by a party in interest or notice to Piedmont under Rule 3012 and prior to Piedmont filing its claims, the Bankruptcy Court bifurcated Piedmont's claims into secured and unsecured portions under 11 U.S.C. § 506(a), stripped Piedmont's liens to the values stated in the debtor's plan, and confirmed the plan on June 20. Pursuant to Rule 3002(c), Piedmont filed its proofs of claim on August 16, 1990, well within the ninety-day period following the creditors' meeting. No objections were made to either confirmation of the plan or to the filing of Piedmont's claims.

## III. DISCUSSION

The myriad issues raised by the parties can best be stated as three questions: (1) Did Piedmont receive adequate notice in this case?; (2) Can a bankruptcy court bifurcate a claim under § 506(a) when the relevant proof of claim has not yet been filed and the creditor is without notice of the bifurcation hearing because no party in interest has filed a motion seeking bifurcation under 506(a)?; and (3) Is a confirmed plan that contains such bifurcated claims res judicata regarding the treatment of such claims when a party timely files its proofs of claim after confirmation and after the expiration of the period for appealing the confirmation order? After considering the relevant statutes and cases, I have decided that Piedmont lacked appropriate notice of these proceedings and that the Bankruptcy Court exceeded the scope of the confirmation hearing by making a secured status determination pursuant to § 506(a) under these circumstances. Therefore, I will reverse in part the Bankruptcy Court's denial of Piedmont's motion to revoke [1] the confirmation order, with the effect of vacating the confirmation order insofar as it affects Piedmont's claims. I

will also remand the case for further proceedings before the Bankruptcy Court. Because the case is being remanded for further consideration, I will not rule on Piedmont's motions to convert to Chapter 7 and to lift the stay. I leave these issues for further consideration by the Bankruptcy Court.

### A. Notice

Regarding the issue of notice, the only documents that Piedmont received concerning the bankruptcy—the summary of the plan and the confirmation notice—contain several flaws. First, the summary provided to Piedmont differs to such a degree from the plan itself that, as a matter of law, it cannot constitute a "summary" as provided for in Rule 3015. The document that accompanied the notice was deficient in several respects: 1) it inaccurately stated the amount Piedmont would receive under the plan; 2) it inaccurately stated the amount of monthly payments to the trustee; 3) it inaccurately stated that the duration of the plan was three years instead of five years; 4) it stated that the schedules listed secured debts in the amount of $24,000 but made no mention that the plan proposed to treat only $7,000 of those debts as secured; and 5) it made no mention that the valuation of property was an issue in the case.

Second, the confirmation notice did not fix the time for filing objections to confirmation. This notice is mandated by the Rules. *See* Fed.R.Bankr.P. 2002(b).

Third, the confirmation notice—the only notice to Piedmont—did not mention that valuation issues under § 506 for the purpose of reducing Piedmont's claims and liens would be addressed in conjunction with the confirmation hearing. This third flaw is, in itself, fatal. As the D.C. Circuit observed: "[T]he content of the notice must reasonably inform the recipient of the nature of the upcoming proceeding. Fail-

---

1. As "revoke" is a term peculiar to § 1330, which concerns vacating a confirmed plan on the grounds of fraud, it would be preferable for counsel who are asserting due process grounds to invalidate a confirmation order to use the

more general terms "vacate" or "set aside" when stating their case. In any event, the appropriate relief should not turn on such a lapse when the grounds alleged for vacating the order are clear.

ure to meet [this] element renders the notice defective." *In re Auto–Train Corp.,* 810 F.2d 270, 278–79 (D.C.Cir.1987) (citations omitted) (discussing notice for contested matters).

◼ Of course, values are considered at every Chapter 13 confirmation hearing when the plan is evaluated under § 1325. But the nature of that proceeding is different from a proceeding that bifurcates a creditor's claim or strips a creditor's lien after a valuation, which are considered contested matters. *See* Fed.R.Bankr.P. 9014; *see also* 9 Collier on Bankruptcy ¶ 7001.-05[1] (15th ed. 1991) (discussing this issue). First, the confirmation hearing, in itself, is not an adversary proceeding or even a contested matter. *See Matter of Beard,* 112 B.R. 951, 955 (Bankr.N.D.Ind.1990); *Matter of Dues,* 98 B.R. 434, 440 (Bankr. N.D.Ind.1989); 5 *Collier on Bankruptcy* ¶ 1324.01[3] (noting that an objection to confirmation gives rise to a contested matter). Second, the Fourth Circuit recently stressed the importance that the courts should make a valuation under § 506 in light of the purpose of the valuation. *See In re Balbus,* 933 F.2d 246, 252 (4th Cir. 1991) (examining valuation for the purpose of determining if the debtor is eligible for Chapter 13 relief under § 109(e)). Therefore, the values considered under § 1325 are not necessarily interchangeable with the results of a valuation under § 506 because that valuation concerns a different purpose. In light of the different nature and purpose of the proceedings, notice of a confirmation hearing alone is defective to the extent it attempts to include notice of a § 506 valuation hearing for the purpose of bifurcating a creditor's claim or stripping a creditor's lien.

◼ Piedmont contends that it was entitled to specific notice under Rule 3012 that § 506 valuation issues would be addressed at the confirmation hearing. Piedmont primarily relies on *In re Calvert,* 907 F.2d 1069 (11th Cir.1990), which supports its position. The trustee asserts that Rule 3012 is merely an additional permissive way for the issue to be presented to the court and that there is no case authority to support

the position that Rule 3012 is a mandatory prerequisite to valuation and the resulting confirmation. The trustee, however, has not cited any case authority for this proposition. Rule 3012 reads:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

The permissive aspect of Rule 3012 lies in the discretion of the court to deny a motion for valuation. *See In re Thurston,* 130 B.R. 541, 542 (Bankr.W.D.Mo.1991); *In re Washington Mfg. Co.,* 128 B.R. 198, 204 (Bankr.M.D.Tenn.1991). Aside from the verb "may" that confers this discretion on the court, there is nothing to indicate that Rule 3012 is, as the trustee urges, merely optional. The cases addressing Rule 3012 generally indicate that it is the appropriate route for valuation proceedings. *See, e.g., In re Calvert,* 907 F.2d at 1072; *In the Matter of Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1354 & n. 20 (5th Cir.1989); *In re Crestwood Co.,* 127 B.R. 213, 215 (E.D.Ark.1991); *In re Landing Assocs., Ltd.,* 122 B.R. 288, 291 (Bankr.W.D.Texas 1990); *In re Hermansen,* 84 B.R. 729, 735 (Bankr.D.Colo.1988); *In re Wilkins,* 71 B.R. 665, 668–69 (Bankr.N.D.Ohio 1987). Elementary rules of statutory construction—expressio unius est exclusio alterius—lead to the same result. Rule 3012 does not, however, require a separate hearing. As § 506 itself indicates, the valuation hearing can take place in conjunction with the confirmation hearing.

The only case that I am aware of that supports the trustee's position is *In re Pourtless,* 93 B.R. 23, 25 (Bankr.W.D.N.Y. 1988), which states that Rule 3012 is merely a "general procedure" that can be used in a context not anticipated by the Code. In that case, however, the court noted that "specific notice" was given to the creditor that valuation would be an issue at the confirmation hearing, *id.* at 24, which accomplishes the notice requirement of Rule 3012 in any event. At no time was Pied-

mont on notice that § 506 valuation issues would be addressed at confirmation. Although the Chapter 13 plan anticipated a § 506(a) bifurcation as well as a § 506(d) reduction in liens, no motion was made to begin the appropriate contested matter. As no motion was made, it is not surprising that Piedmont also failed to receive its appropriate notice through this mechanism.

## B. Procedure for a Secured Status Determination

At the outset, I should note that neither the parties nor myself have been able to glean much guidance from case law or commentary on the treatment of pre-petition claims that are timely filed after confirmation and are altered by the confirmation order. Such a question is essentially one of first impression. The issue was considered in the line of cases involving *In re Lewis*, 64 B.R. 415 (Bankr.E.D.Pa.1986), *aff'd*, 85 B.R. 719 (E.D.Pa.), *clarified*, 89 B.R. 430 (E.D.Pa.1988), but the case eventually turned on the interpretation of detailed provisions of the debtor's plan, *In re Lewis*, 875 F.2d 53 (3d Cir.1989), which reversed the original order of the district court. Therefore, I do not believe that this line of cases can furnish sure guidance on the issue generally.

■ Any analysis should begin with the language of the relevant statute. Section 506(a), which concerns dividing a claim into secured and unsecured portions, reads:

An *allowed claim* of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added). The procedure detailed in § 506(a) concerns an "allowed claim." Despite the protestations of the trustee, I am not at liberty to strike the word "allowed" from the statute. It is a basic premise of statutory interpretation that, whenever reasonably possible, the court must give effect to every word of a statute. *United States v. James*, 834 F.2d 92, 93 (4th Cir.1987). Section 502, which addresses the allowance of claims, reads in relevant part: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Therefore, a proof of claim must be filed under § 501 as a prerequisite to allowance under § 502, which itself is a prerequisite to invoking a hearing under § 506(a). This is contrary to the trustee's position that claims in a Chapter 13 case do not have to be filed before they are allowed.

■ The Bankruptcy Court in this case recognized this procedure, but dismissed it as a technicality. *See In re Linkous*, Case No. 90–00608 (Bankr.W.D.Va. March 11, 1991) at 7 ("The court first notes that when the confirmation hearing was held [Piedmont] had not yet filed its proofs of claim, and therefore its claims were technically not yet allowed claims as provided in ... 11 U.S.C. § 502."). Many courts and commentators have recognized the necessity of filing a proof of claim as a prerequisite to allowance under the Code. *See In re Richards*, 50 B.R. 339, 341 (E.D.Tenn.1985); *In re Painter*, 84 B.R. 59, 62 (Bankr.W.D.Va. 1988); *In re Roseboro*, 77 B.R. 38, 40 (Bankr.W.D.N.C.1987); *In re Rogers*, 57 B.R. 170, 172 (Bankr.D.Tenn.1986); *In re Atoka Agric. Sys., Inc.*, 39 B.R. 474, 476 (Bankr.E.D.Va.1984); *In re Francis*, 15 B.R. 998, 1003 (Bankr.E.D.N.Y.1981); *In re Hotel Assocs., Inc.*, 3 B.R. 340, 342 (Bankr. E.D.Pa.1980); 3 *Collier on Bankruptcy* ¶¶ 501.01, 502.01, 506.07; 3 *Norton Bankruptcy Law and Practice* § 76.06 (1991). Allowance as a prerequisite to invoking § 506(a) is also widely recognized. *See In re Calvert*, 907 F.2d at 1071 n. 1; *In re Palombo Farms of Colorado, Inc.*, 43 B.R. 709, 711 (Bankr.D.Colo.1984); *In re Atoka Agric. Sys. Inc.*, 39 B.R. at 476; *In re Landers*, 28 B.R. 101, 104 (Bankr.N.D.Ala. 1983); *In re Busman*, 5 B.R. 332, 340

(Bankr.E.D.N.Y.1980); *In re Hotel Assocs., Inc.*, 3 B.R. at 341–42; 3 *Collier on Bankruptcy* ¶ 506.04; 3 *Norton Bankruptcy Law and Practice* § 76.06. The sequence of events envisioned by the Code is hardly novel; it is designed to prevent putting the cart before the horse. Aside from other issues such activity can raise, it would be a great waste of judicial resources to spend time and energy bifurcating claims when the claims themselves were eventually never filed or later disallowed.

The trustee argues that in a Chapter 13 case claims do not have to be filed before they are allowed because a Chapter 13 plan can set the value of a secured claim pursuant to 11 U.S.C. § 1322(b)(2) and § 1322(b)(10). Although Chapter 9 and Chapter 11 have provisions that obviate the need for filing, *see* 11 U.S.C. §§ 925 and 1111, Chapter 13 does not have a comparable provision. *See In re Francis, supra,* 15 B.R. at 1003 n. 9 (noting that Chapter 13 differs from Chapters 9 and 11 in this respect). As Congress clearly was aware of how to create an exception in these circumstances and chose not to do so in a Chapter 13 case, I see no reason to read such an exception into the provisions cited by the trustee. Section 1322(b)(2) provides that generally a plan may modify the rights of holders of secured claims, but does not provide any details as to what procedure is necessary to accomplish such a modification of rights. Section 1325(a)(5)(A) contemplates that the holder of an *allowed secured* claim accept the plan as one of the conditions of mandatory confirmation. Thus, even though the plan may propose a modification, confirmation contemplates that the issue of allowance of a secured claim will be addressed before the plan is confirmed. Section 1322(b)(10) is a catch-all provision that allows any appropriate plan provision not inconsistent with Title 11. As Chapter 13 does not contain the exception contained in Chapters 9 and 11, a Chapter 13 plan that attempted to accomplish the same result is inconsistent with Title 11 and cannot rely on § 1322(b)(10) to justify itself. I also find it significant that the Bankruptcy Court noted that the claims before it in the immedi-

ate case had not yet been allowed. *See In re Linkous, supra.*

The cases cited for support by the trustee are unpersuasive on this point. *In re Bellamy*, 122 B.R. 856, 859 (Bankr.D.Conn. 1991) is cited for the proposition that the plan can determine the allowed amount of a secured claim. *Bellamy* notes that when a debtor owes an arrearage on a mortgage, she can provide in the plan for the arrearage as the allowed amount of the secured claim, citing § 1322(b)(5) and § 1325(a)(5). *Id.* This does not show that a plan can determine the amount of an allowed claim, but merely states that when a fixed sum such as a mortgage arrearage is in question, the debtor can easily anticipate the exact sum that will be allowed and provide for such an amount in the plan. Indeed, to accept the trustee's assertion that a plan can determine the allowed amount of a claim would render § 1325(a)(5)(B)(ii) a truism. That provision, which is one condition to be considered during confirmation, reads, in relevant part: "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." If the plan itself determined the allowed amount, these values would never differ when any sum of money is provided for in the plan.

*In re Gadson*, 114 B.R. 453 (Bankr. E.D.Va.1990) does not advance the trustee's cause either, as it was decided under a local rule not applicable to the case before me. The broad statement in *In re Rogers*, 57 B.R. 170, 172 (Bankr.E.D.Tenn.1986) concerning the power of plans to determine claims does support the trustee's position. I find it unconvincing, however, as it does not provide any analysis of the bankruptcy provisions that lead to such a statement and is also narrowed significantly on the following page of the opinion, *id.* at 173 ("A debtor should not be able to convert a claim filed as secured into an unsecured claim simply by choosing to treat it as unsecured in a chapter 13 plan."). In addition, there are other cases that indicate that the trustee's position is untenable. *See, e.g., In re Hobdy*, 130 B.R. 318, 322

(9th Cir. B.A.P.1991) (Perris, J. concurring) ("It is inconsistent with Title 11 for a plan to effectively determine the amount of a secured claim [in a Chapter 13 case]."); *In re Simmons*, 765 F.2d 547, 553 (5th Cir. 1985) (holding that a plan will not even constitute an objection to a proof of claim, which obviously indicates that a plan is incapable of determining the claim).

Finally, the trustee cites *In re Yoder*, 32 B.R. 777, 779–80 (Bankr.W.D.Pa.1983), *aff'd in part and rev'd in part*, 48 B.R. 744 (W.D.Pa.1984) for the proposition that a debtor's petition for valuation of property under § 506(a) can constitute the filing of an allowed claim. This result was also reached in *In re Brager*, 28 B.R. 966 (Bankr.E.D.Pa.1983), which was cited as authority for *Yoder* on appeal, *see* 48 B.R. at 747.

I concur with the court in *In re Dembo*, 126 B.R. 195, 199 n. 3 (Bankr.E.D.Pa.1991), which strongly criticizes the result reached in *Brager* and followed in *Yoder*, that whatever vitality such a position may have enjoyed has been undercut by subsequent amendments to the Federal Rules of Bankruptcy Procedure. One element of the rationale for permitting the debtor's petition as constituting an allowed claim was the concern that the alternative would permit a creditor to avoid the jurisdiction of the bankruptcy court. *See Yoder*, 32 B.R. at 780. This concern is now addressed in Rule 3004, effective as amended August 1, 1987, which makes it clear that the debtor or trustee can prevent this by filing on behalf of a creditor. Moreover, the two bases for the decision of the *Brager* court do not withstand close analysis. First, its correct observation that filing is merely permissive, 28 B.R. at 967, does not lead to the conclusion that failure to file does not have its consequences. Second, the decision relies solely on a rationale stated by *Collier on Bankruptcy* in 1982 that has since been repudiated. *Compare* 3 *Collier on Bankruptcy* ¶ 506.07 (15th ed. 1982) ("[I]t would seem that the word 'allowed' refers to the status of a claim following application of section 506(a) and not as a precondition to it.") (quoted in *Brager*, 28 B.R. at 968) *with* 3 *Collier on Bankruptcy*

¶ 506.02 (15th ed. 1991) ("Section 506 does not govern the allowance of claims."); *see also In re Dembo*, 126 B.R. at 200 (stating that § 506(a) can only be used to attack a proof of claim of a creditor); *In re Taylor*, 96 B.R. 584, 593 n. 6 (Bankr.E.D.Pa.1989) (same).

Of more import in the immediate case, the record does not reveal that Linkous ever filed a petition for valuation under § 506(a), rendering this line of argument by the trustee irrelevant. The foregoing discussion is relevant to address the possibility that one might (wrongly) construe a plan that contains bifurcated claims to constitute a petition for valuation under § 506. Generally, the appropriate mechanism for such an effort is a motion as provided in Rule 3012.

▌ Therefore, it is clear that the plan itself did not set the amount of the allowed claim and also that Piedmont did not have any allowed claims before the Bankruptcy Court when the § 506 valuation was performed at the confirmation hearing. Indeed, Piedmont did not even file proofs of claim until almost two months after the confirmation hearing. There is no question here, however, that Piedmont timely filed its claim. Piedmont was justified in not having presented its proofs of claim prior to the confirmation hearing. Rule 3002(c) provides for a ninety-day period following the meeting of creditors for a creditor to file a proof of claim and Piedmont filed within this period. This is one of the few time periods that a court does not have the discretion to reduce. *See* Fed.R.Bankr.P. 9006(c)(2). A debtor, therefore, cannot compel a creditor to file a proof of claim early, even by scheduling the confirmation hearing within the ninety-day period. *Cf. In re Lewis*, 89 B.R. 430, 432 ("A debtor may not force his creditor to file a proof of claim before the claims bar date … simply by including certain language in his plan because such provisions are plainly inconsistent with the Bankruptcy Code and Rules."). To rule otherwise would allow the bankruptcy court to force a creditor to file a claim before the 90–day period expires, in direct contravention of Rule

9006(c)(2). In essence, Piedmont in this case has been told that its claims were adjudicated and the appeal period expired before it even entered the case by timely filing its claims. Such treatment constitutes a violation of due process.

■■■■ A proof of claim that is timely filed and has not been objected to by a party in interest is deemed allowed. 11 U.S.C. § 502(a). Such a proof of claim constitutes prima facie evidence of the validity *and amount* of the claim. Fed. R.Bankr.P. 3001(f). Therefore, the value stated in the debtor's plan regarding such a claim is irrelevant once a proof of claim is timely filed. Given the effect accorded a valid proof of claim by the Bankruptcy Code and Rules, the burden properly falls on the debtor or trustee to challenge the claim through appropriate procedures. The argument that the confirmation of a plan can satisfy this burden has failed in analogous circumstances because it is inappropriate to force the creditor to object to the plan [2] when it is the debtor or trustee who must overcome the prima facie effect of the proof of claim. *See In re Golden Plan of California, Inc.*, 829 F.2d 705, 711–12 (9th Cir.1986); *In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1337 (9th Cir.1985); *In re McKay*, 732 F.2d 44, 48 (3d Cir.1984). As Piedmont timely filed its claims and no party has yet objected to them, Piedmont currently has two allowed secured claims—one in the amount of $18,641.31 for the loan secured by the mobile home and the other in the amount of $4,322.82 for the loan secured by the automobile.

## C. Res Judicata Effect of a Confirmed Plan

■■■■ The debtor and trustee urge that the confirmed plan is final as the ten-day appeal period has expired and § 1327(a) provides that the plan is binding on both debtors and creditors. Generally, § 1327(a) does provide a res judicata effect

to the terms of a confirmed plan. *See, e.g., In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989). This effect, however, is premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are properly within the scope of the confirmation hearing. Issues that were not mature for decision and could not be appropriately resolved in either the confirmation hearing or in the order confirming the plan are not barred.

Irregularities such as those present in this case can override the valid and appropriately strong concern for the finality of a bankruptcy confirmation order. For example, in *In re White*, 908 F.2d 691 (11th Cir.1990), the court was confronted with an appeal after the ten-day period had expired and the confirmation order had become final. Nevertheless, the court did not treat the confirmation order as final because "the bankruptcy court's procedural lapses trapped [the creditor] into its present posture." *Id.* at 693. Furthermore, the court noted that its actions were supported by "the justifiable reliance of [the creditor] that the bankruptcy court would follow required notice procedures and rule only on matters properly before the court." *Id.* at 694. These same concerns are present in the immediate case. Another recent case, *In re Hobdy*, 130 B.R. 318 (9th Cir. B.A.P. 1991), notes that, absent a debtor's objection, it is reasonable for a creditor to assume that the resulting plan will not impair its claim in any manner because a claim is presumptively valid as filed. *Id.* at 320. *Hobdy* also found that a confirmed plan was not entitled to res judicata effect because requisite notice was not provided to the creditor. *Id.* at 321.

Regarding the treatment accorded Piedmont's liens, to the extent that the confirmation order altered them, it is erroneous and will be vacated through the reversal of the Bankruptcy Court's decision on the mo-

---

**2.** In the immediate case, the debtor and trustee have made much of the failure of the creditor to object to the plan. In the opinion of a leading commentator, however, Piedmont could not object to confirmation because it did not yet hold an allowed claim and, therefore, lacked standing to object. *See* 5 *Collier on Bankruptcy* ¶ 1324.01[3] (citing *In re Stewart*, 46 B.R. 73 (Bankr.D.Or.1985)).

tion to revoke. This is consistent with the line of cases which hold that unless properly attacked, a lien is unaffected by the terms of a confirmed plan. *See, e.g., In re Simmons,* 765 F.2d at 555–59; *In re Mikrut,* 79 B.R. 404, 406 (Bankr.W.D.Wis. 1987); *In re Stein,* 63 B.R. 140, 145 (Bankr. D.Neb.1985); *In re Spohn,* 61 B.R. 264, 265 (Bankr.W.D.Wis.1986); *see also Dewsnup v. Timm,* — U.S. —, —, 112 S.Ct. 773, 777–80, 116 L.Ed.2d 903 (1992) (stressing the vitality of liens).

Based on the foregoing analysis, I will reverse in part the Bankruptcy Court's denial of Piedmont's motion to revoke the confirmation order, with the effect of vacating the confirmation order insofar as it affects Piedmont's claims. In addition, I will remand the case for further proceedings before the Bankruptcy Court consistent with this opinion.