**In re Rennie A. CLARK, Debtor.**

**Rennie A. CLARK, Plaintiff,**

v.

**TRANSAMERICA FINANCIAL SERVICES, INC.,
Defendant.**

Bankruptcy No. 96–40843.

Adversary No. 96–4117.

United States Bankruptcy Court,
S.D. Illinois.

Jan. 17, 1997.

Layman Summers, Carbondale, IL, for Plaintiff.

Robert P. Schulholf, Carbondale, IL, for Defendant.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Debtor, Rennie Clark, filed this Chapter 13 case after obtaining a discharge in a previous Chapter 7 case.[1]  In his schedules, the debtor listed two secured creditors holding first and second mortgages on the debtor's residence, respectively, and no unsecured creditors.  Simultaneously with the filing of his amended Chapter 13 plan, the debtor filed the present action to avoid the lien of the second mortgagee, Transamerica Financial Services, Inc. ("Transamerica"), as an unsecured claim under 11 U.S.C. § 506(a) and (d).

At hearing on the debtor's complaint, the parties stipulated that the value of the debtor's residence was less than the amount of the first mortgage.  Transamerica, however, asserted that the debtor could not avoid its lien by reason of § 1322(b)(2), which prohibits a Chapter 13 debtor from modifying a claim "secured only by a security interest in real property that is the debtor's principal residence."  11 U.S.C. § 1322(b)(2).  Transamerica argued that the Supreme Court's decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124

---

1.  The debtor's Chapter 7 case, No. 96–40057, was closed as a "no asset" case on April 25, 1996.  The debtor subsequently filed this Chapter 13 case on July 16, 1996.

L.Ed.2d 228 (1993), was applicable to prevent a "strip down" of residential mortgages in Chapter 13 proceedings even when the lien is completely unsecured by any equity in the property.

The Court took the debtor's complaint under advisement to determine whether, under the language of § 1322(b)(2) and the Supreme Court's decision in *Nobelman,* the debtor could modify Transamerica's claim by eliminating its lien on the debtor's residence. At the time of hearing on the debtor's complaint, the deadline for filing proofs of claim in the debtor's Chapter 13 proceeding had not expired.[2] However, subsequent to the hearing and while the debtor's complaint was under advisement, the deadline for filing proofs of claim expired without a proof of claim being filed by Transamerica or by the debtor on Transamerica's behalf. In light of this development, the Court, having not yet rendered its decision concerning avoidability of Transamerica's lien, is required to consider whether § 1322(b)(2) may be applied to prevent modification of a claim in the absence of a proof of claim having been filed.

Section 1322(b)(2) by its terms sets forth the requirements of a Chapter 13 plan with regard to "claims" filed by creditors.[3] It is axiomatic that in order to have an allowed claim entitled to payment under a Chapter 13 plan, a creditor must file a proof of claim. *See* 11 U.S.C. §§ 501, 502(a); *In re Linkous,* 141 B.R. 890, 895–96 (W.D.Va. 1992), *aff'd* 990 F.2d 160 (4th Cir.1993); *In re Francis,* 15 B.R. 998, 1003 (Bankr.E.D.N.Y. 1981). The anti-modification provision of § 1322(b)(2) relates to allowed "claims" of a creditor and not merely to obligations that are owing to a creditor. Since no proof of claim was filed regarding the debtor's obligation to Transamerica, Transamerica has no "claim" in the debtor's Chapter 13 proceeding that can be modified by the debtor's plan. Indeed, in the absence of a claim to be paid under the debtor's plan,[4] the plan itself has no effect on Transamerica's rights as a secured creditor.[5] Transamerica, therefore, may not invoke the protection of § 1322(b)(2) when it has not filed a proof of claim that can be modified by the debtor's plan.[6]

The question remains whether the debtor, without concern for the anti-modifica-

2. The deadline for filing proofs of claim in a Chapter 13 case is 90 days after the first date set for the 341 meeting of creditors or, in this case, November 11, 1996. *See* Fed.R.Bankr.P. 3002(c). If a creditor fails to file a proof of claim by this date, the debtor may do so on the creditor's behalf within 30 days after such date. Fed.R.Bankr.P. 3004. Thus, the last date for filing a proof of claim in this case was December 11, 1996.

3. Section 1322(b) provides, for example:
    (b) [T]he [Chapter 13] plan may—
    (1) designate a class or classes of unsecured *claims* ...;
    (2) modify the rights of holders of secured *claims* ..., or of holders of unsecured *claims,* or leave unaffected the rights of holders of any class of *claims*....
    11 U.S.C. § 1322(b) (Emphasis added).

4. The debtor's confirmed plan makes no provision for payment of the obligation owing to Transamerica but merely recites that the debtor has filed a "motion to remove" Transamerica's lien. The plan contains the standard provision that unsecured creditors "whose claims have been filed and allowed" are to share in the pro-rata distribution of remaining funds.

5. If Transamerica were a fully secured creditor, it could ignore the bankruptcy proceedings and

enforce its lien outside of bankruptcy against the collateral securing its debt. *See In re King,* 165 B.R. 296, 298–99 (Bankr.M.D.Fla.1994) (a properly secured lien passes through bankruptcy, and a creditor holding such a lien may ignore the bankruptcy proceedings and look to its lien for satisfaction of the debt). Recovery of any deficiency would be barred, however, as a deficiency claim is an unsecured claim that must be filed in the bankruptcy proceeding. *Id.*

6. The Court can only presume that Transamerica's failure to file a proof of claim in this case was inadvertent. While a secured creditor need not file a claim in order to retain its rights after bankruptcy against the collateral securing its lien, Transamerica has conceded that its lien is entirely unsecured by any equity in the debtor's residence. Thus, by failing to file a proof of claim, Transamerica has not only lost the opportunity to persuade the Court that its mortgage lien is protected by the anti-modification provision of § 1322(b)(2), but has also lost its right to any distributions under the plan as the debtor's only unsecured creditor. Of course, Transamerica may have calculated that its lien would become secured by value in the debtor's residence as the debtor made payments on the first mortgage and thereby built up equity. If so, the Court can only conclude that Transamerica's argument at hearing concerning the applicability of § 1322(b)(2) was entirely disingenuous.

tion provision of § 1322(b)(2), may avoid Transamerica's lien under § 506(a) and (d) when no proof of claim has been filed on Transamerica's behalf. Section 506 provides in pertinent part:

(a) An *allowed claim* of a creditor secured by a lien on property in which the estate has an interest ... is a *secured claim* to the extent of the value of such creditor's interest ... in such property, ... and is an *unsecured claim* to the extent that the value of such creditor's interest ... is less than the amount of such *allowed claim.*

.    .    .    .    .

(d) To the extent that a lien secures a claim against the debtor that is not an *allowed secured claim,* such lien is void unless—

.    .    .    .    .

(2) such claim is not an *allowed secured claim* due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(a) and (d) (Emphasis added).

■ The clear implication of § 506(a)'s reference to "allowed" claims is that a creditor's claim must be filed and allowed before a court can value the claim pursuant to § 506(a). *See King,* 165 B.R. 296, 299 (Bankr.M.D.Fla.1994). Section 506(a) speaks in terms of valuing a "claim" rather than the collateral underlying such a claim. *Id.; see also* Fed.R.Bankr.P. 3012 (providing for valuation of a "claim" secured by a lien on motion of a party in interest). Since it would be illogical to value something that does not yet exist, the language of § 506(a) indicates that filing a proof of claim is a prerequisite to a court's determination of the value of a secured claim. *King,* at 298–99.

The avoidance provision of § 506(d) likewise refers to "allowed" claims and provides that a lien securing a claim that is not an "allowed secured claim" is void. While Transamerica's lien constitutes such a lien, its avoidance is precluded under the exception of subsection (2), which states that a lien may not be avoided if the claim is "not an

allowed secured claim due only to the failure of any entity to file a [proof of claim]." Prior to the 1984 amendment adding subsection (2), there was a conflict in the courts concerning whether § 506(d) avoidance could be employed absent the filing of a proof of claim. *See In re Henninger,* 53 B.R. 60, 62 (Bankr.W.D.N.Y.1985). However, subsection (2) now clearly provides that liens for which no proof of claim has been filed may not be avoided for that reason under § 506(d), and the lien securing that creditor's claim thus remains unaffected by a bankruptcy filing. *Id.; see also Linkous,* 141 B.R. at 897.

In this case, despite the parties' stipulation that the value of the debtor's residence is less than the first mortgage, the Court has made no determination of value under § 506(a) and is precluded from doing so in the absence of a claim having been filed and allowed. *Cf. In re Dembo,* 126 B.R. 195, 197 (Bankr.E.D.Pa.1991) (court unable to determine value under § 506(a) when no proof of claim was filed even though parties stipulated to value of collateral underlying their purported claims). Since the debtor has stated no basis for avoidance of Transamerica's lien other than its lack of secured status under § 506(a) and (d), and since the claim secured by Transamerica's lien is not an allowed secured claim only because no party filed a proof of claim under § 501, the exception of § 506(d)(2) applies and prevents the avoidance of Transamerica's lien on the debtor's residence. Transamerica's lien thus survives the debtor's bankruptcy filing, and Transamerica may pursue whatever remedies such lien may afford it outside of bankruptcy. Application of § 506(d)(2) does not unfairly prejudice the debtor's fresh start in this case because he had the ability to file such a claim on Transamerica's behalf in order to avoid the lien under § 506(a) and (d). *See* Fed.R.Bankr.P. 3004; *King,* at 299; *Dembo,* at 200.[7]

For the reasons stated in this opinion, the Court finds that the debtor may not avoid Transamerica's lien against his residential real estate and that the relief requested in

---

7. The Court notes that while the parties in this case have requested a consideration of certain issues, both parties have failed, whether strate-

gically or inadvertently, to take those steps necessary to present the issues to the Court in a manner in which they could be decided.

the debtor's complaint under § 506(a) and (d) must be denied.